Thomas S. Waldo
Olivia Glasscock
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: twaldo@earthjustice.org
E: oglasscock@earthjustice.org

*Attorneys for Plaintiffs Southeast Alaska Conservation Council; Alaska Rainforest Defenders; Center for Biological Diversity; Sierra Club; Defenders of Wildlife; Alaska Wilderness League; National Audubon Society; and Natural Resources Defense Council.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL; ALASKA RAINFOREST DEFENDERS; CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; DEFENDERS OF WILDLIFE; ALASKA WILDERNESS LEAGUE; NATIONAL AUDUBON SOCIETY; and NATURAL RESOURCES DEFENSE COUNCIL, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; DAVID SCHMID, in his official capacity as United States Forest Service Region 10 Regional Forester; and EARL STEWART, in his official capacity as Forest Supervisor for the Tongass National Forest, <br><br> *Defendants*. | Case No. 1:19-cv-00006-SLG |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
(5 U.S.C. §§ 701-06; 16 U.S.C. § 1604;
16 U.S.C. § 3120; 42 U.S.C. § 4332)

## SUMMARY

1.     This action challenges the Prince of Wales Landscape Level Analysis Project Record of Decision (the Record of Decision) signed by Tongass Forest Supervisor Earl Stewart on March 16, 2019, and the associated Final Environmental Impact Statement (FEIS) published on November 2, 2018. Plaintiffs bring this case under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332, the Alaska National Interest Lands Conservation Act (ANILCA), 16 U.S.C. § 3120, and the National Forest Management Act (NFMA), 16 U.S.C. § 1604.

2.     The Prince of Wales Landscape Level Analysis Project (the Project) in the Tongass National Forest includes extensive old-growth and second-growth logging. The project area is roughly 2.3 million acres. The project area contains about 1.8 million acres of national forest land. The Project authorizes logging of up to 656 million board feet (mmbf) of timber. The U.S. Forest Service (Forest Service) estimates that this logging would occur on over 42,000 acres. The Forest Service estimates about 164 miles of roads associated with the logging would be constructed as part of the Project. The Record of Decision authorizes implementation of the Project to take place over a span of fifteen years.

3.     The project area is located on Prince of Wales Island and surrounding islands. The islands in the project area have been subject to decades of old growth logging and road building. These activities have significantly reduced habitat capability

for the Alexander Archipelago wolf, Sitka black-tailed deer, and other species. Logging has significantly restricted opportunities for subsistence hunting of deer. The Project will further exacerbate these impacts. The Project will irreparably harm residents of the island who engage in subsistence and other uses of the project area.

4. The Forest Service has authorized this Project using an approach that has been soundly rejected by the courts. The agency authorized the Project before identifying specific locations for logging or road construction. As a result, the FEIS does not adequately describe the direct, indirect, or cumulative impacts of the Project on the human environment or on subsistence uses.

5. The Forest Service is required to comply with the 2016 Land and Resource Management Plan for the Tongass National Forest (2016 Amended Forest Plan). The 2016 Amended Forest Plan requires the Forest Service to provide site-specific information, such as unit cards and road planning measures, during the planning process. The Forest Service did not provide that information during its planning process. It has stated it will not do so until the implementation phase.

6. By failing to specify where logging would occur or where new roads would be built, and by failing to evaluate the impacts of these location-specific activities, the FEIS does not provide sufficient information for informed decision-making or informed public participation.

## JURISDICTION, RIGHT OF ACTION, AND VENUE

7.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and may issue a declaratory judgment and further relief pursuant to 28 U.S.C. § § 2201-02.  Judicial review is available under the Administrative Procedure Act. 5 U.S.C. § § 701-06.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

## PLAINTIFFS

9.     Southeast Alaska Conservation Council (SEACC) is a non-profit, member-based organization, with hundreds of members, a majority of whom are Alaskans.  They come from many walks of life, including commercial fishermen, Alaska Natives, tourism and recreation business owners, small timber operators, and high-value-added manufacturers, hunters, and guides.  SEACC reaches out to its members and the general public through various means, including its website, Facebook and Instagram accounts, its newsletter "The Ravencall," other publications, action alerts, and public meetings. SEACC's mission is to protect the special places of the world's largest temperate rainforest, promote conservation, and advocate for sustainability in human use of natural resources.  Inspired by the land, wildlife, cultures, and communities of Southeast Alaska, SEACC strives to insure this interconnected whole exists for future generations.  To achieve its mission, SEACC and its members have worked to protect the Tongass National Forest and advocated for balanced, sustainable use of the Tongass National Forest's renewable forest resources, including fish and wildlife and the commercial,

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,     3
Case No. 1:19-cv-00006-SLG

recreational, and subsistence use of such resources for nearly 50 years. SEACC's public advocacy, education, and organizing efforts have created a legacy of effective partnerships with leaders within the region, and across the state and country. SEACC's community forest planning efforts, promotion of restoration, stewardship, and renewable energy projects, and land protection advocacy all contribute to its efforts to address ecological, energy, and economic needs throughout the Tongass.

10.    Alaska Rainforest Defenders is a regional conservation non-profit corporation in Southeast Alaska. Alaska Rainforest Defenders was formerly known as Greater Southeast Alaska Conservation Community. The Alaska Rainforest Defenders stand together to defend and promote the biological integrity of Southeast Alaska's terrestrial, freshwater, and marine ecosystems for the benefit of current and future generations. Alaska Rainforest Defenders seeks to foster protection of southeast Alaska's fish and wildlife and their habitat. The members of Alaska Rainforest Defenders use public lands throughout southeast Alaska and the project area for commercial and subsistence fishing and hunting, professional scientific work, and a wide range of recreational activities.

11.    Center for Biological Diversity is a non-profit corporation headquartered in Tucson, Arizona, with offices in a number of states. The Center has approximately 70,000 members throughout the United States, including Alaska, as well as in other countries. The Center works to ensure the long-term health and viability of animal and

plant communities across the United States and elsewhere, and to protect the habitat these species need to survive. The Center believes that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked. The Center has been actively involved in protecting Alaska's wildlife since the early 1990s. With regard to the Tongass National Forest, the Center has filed petitions to protect the Queen Charlotte goshawk and the Alexander Archipelago wolf under the Endangered Species Act. The Center closely follows the fate of these and many other species that depend upon old growth habitat in the Tongass.

12. The Sierra Club is a national nonprofit organization of approximately 780,000 members dedicated to exploring, enjoying, and protecting the wild places of the earth; to practicing and promoting the responsible use of the earth's ecosystems and resources; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. Members of the Sierra Club nationally, and Sierra Club's Alaska Chapter locally, use the Tongass National Forest for recreation, commercial and recreational fishing, subsistence, wildlife viewing, and other activities. The Sierra Club has advocated for the protection of Tongass forestlands and the values therein since 1892 when the club was created by John Muir. The Sierra Club has been active in creating, opposing, or supporting Tongass land management actions for 45 years. The Alaska

Chapter of the Sierra Club has approximately 1,800 members with about 380 of them residing in Southeast Alaska.

13.     National Audubon Society is a not-for-profit organization now in its second century.  With its 23 state offices, 41 Centers, and 466 chapters, the mission of the National Audubon Society is to conserve and restore natural ecosystems, focusing on birds, other wildlife, and their habitats, for the benefit of humanity and the earth's biological diversity.  Audubon brings scientific perspective and support to broader, collective conservation efforts to advance conservation-oriented public policies, including in Alaska.  Through the Audubon Alaska state office and the five local Alaska chapters, National Audubon Society has played an important role in conserving Alaska's natural heritage and has long championed Alaska's special places, including the Tongass National Forest.

14.     Defenders of Wildlife is a non-profit organization with its principal office in Washington, D.C. and field offices throughout the country.  Defenders of Wildlife has approximately 1.8 million members and supporters, including over 6,000 in Alaska.  The organization's primary mission is to further the protection of native wildlife and plants in their natural communities.  Defenders of Wildlife has advocated for the protection of Tongass species, including the Alexander Archipelago wolf, Queen Charlotte goshawk, northern flying squirrel, marten, and bats in comments on the Tongass National Forest Management Plan amendment process, by submitting detailed comments on proposed

rules and environmental impact statements, providing information to its members and the public, and litigating.

15. Natural Resources Defense Council (NRDC) is a non-profit environmental advocacy organization with three million members and online activists. NRDC works to safeguard the earth—its people, its plants and animals, and the natural systems on which all life depends. NRDC has a long history of interest and involvement in Tongass-related management issues, dating back to the early 1970s. Over the years, NRDC has participated in numerous management and policy processes, and litigated both defending and challenging federal decisions, affecting the Tongass National Forest. Its members have filed many hundreds of thousands of comments with federal agencies advocating conservation of the Tongass. No other national forest has seen such sustained advocacy from NRDC. This commitment reflects the unique place the Tongass holds in the National Forest System, as its largest unit and the one with far and away the most natural values, and indeed one of the largest in the world's catalogue of remaining principally intact temperate rainforest ecosystems.

16. Alaska Wilderness League (the League) is a non-profit organization with approximately 100,000 members and activists located in Alaska and throughout the United States. The League was founded in 1993 to advocate for protection of Alaska's public lands and waters, which are threatened with environmental degradation. The League is headquartered in Washington, DC and has an Alaska office in Anchorage. The

League works to preserve Alaska's wild lands and waters by engaging citizens and decision makers with a courageous, constant, victorious voice for Alaska. The League works at the federal level on a variety of issues affecting Alaska's wild lands and waters including the Tongass National Forest. The League's rainforest program is focused on protecting old growth forest in the Tongass.

17.     Members of the plaintiff organizations reside near, visit, or otherwise use and enjoy the Prince of Wales project area. Members of the plaintiff organizations use lands throughout the project area for recreation, subsistence, sport hunting and fishing, wildlife viewing, photography, education, and aesthetic and spiritual enjoyment. The plaintiffs and their members derive scientific, recreational, aesthetic, and conservation benefits and enjoyment from their use of the area. The logging and roadbuilding authorized in the Prince of Wales Project will directly and irreparably injure these interests.

18.     The plaintiff organizations monitor the use of forest ecosystems and compliance with the laws respecting these ecosystems, educate their members and the public concerning management of these ecosystems, and advocate policies and practices that conserve the natural value of these ecosystems. Plaintiffs cannot achieve these organizational purposes fully without adequate information and public participation in the processes required by law. The interests and organizational purposes of the plaintiffs are

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*     8
Case No. 1:19-cv-00006-SLG

directly and irreparably injured by Defendants' violations of the laws as described in this complaint.

19.     Plaintiffs participate actively in the administrative processes established for management of the Tongass National Forest and did so for the Prince of Wales Project. Plaintiff groups submitted comments on scoping and on the draft environmental impact statement (DEIS) for the Project.  These groups also filed objections to the draft Record of Decision, pursuant to Forest Service regulations.  Plaintiffs have exhausted administrative remedies for the decision challenged in this complaint.  These organizations seek declaratory and injunctive relief preventing the Forest Service from proceeding with unlawful actions that cause harm to the environment and to subsistence uses, and thereby to their members, pending compliance with the law.

## DEFENDANTS

20.     The full name of Defendant United States Forest Service is United States Department of Agriculture, Forest Service.  It is an agency of the Department of Agriculture entrusted with the administration of the national forests, including the Tongass National Forest.

21.     Defendant United States Department of Agriculture is the department of the executive branch responsible for overseeing the activities of the Forest Service.

22.     Defendant David Schmid is sued in his official capacity as Regional

Forester for Region 10 of the United States Forest Service.  Schmid was the decision-

maker on the objections to the draft Record of Decision for the Prince of Wales Project.

23.     Defendant Earl Stewart is sued in his official capacity as the Forest

Supervisor for the Tongass National Forest.  Stewart signed the Record of Decision for

the Prince of Wales Project.

## FACTS

24.     The Tongass National Forest is part of one of the few temperate rainforest

ecosystems in the world.  It is this country's largest national forest.  Prince of Wales

Island and the other islands in the project area are part of the Alexander Archipelago.

The project area provides habitat for Sitka black-tailed deer, bears, salmon, grouse,

goshawks, Alexander Archipelago wolves, and small endemic mammals.  Decades of

clearcut logging have caused significant habitat loss in the project area.

25.     The communities of Southeast Alaska depend on the Tongass National

Forest and the project area for employment in commercial fishing and fish processing,

recreation, and tourism.  Many residents of the communities in the project area depend on

subsistence hunting and fishing to meet basic needs.  Residents across Prince of Wales

and nearby islands use many parts of the project area for hunting, fishing, and gathering.

26.     The Forest Service published the FEIS on November 2, 2018.  Forest

Supervisor Earl Stewart signed the Record of Decision on March 16, 2019.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*     10
Case No. 1:19-cv-00006-SLG

27.     The maximum volume of timber authorized for sale in the Record of Decision exceeds that of any other single site-specific record of decision issued by the Forest Service nationwide subsequent to 1989.  The maximum volume of old-growth timber authorized for sale in the Record of Decision exceeds that of any other single site-specific record of decision issued by the Forest Service nationwide subsequent to 1989.

28.     The maximum volume of timber authorized for sale in the Record of Decision exceeds that of any other single site-specific record of decision issued by the Forest Service nationwide subsequent to 1994.  The maximum volume of old-growth timber authorized for sale in the Record of Decision exceeds that of any other single site-specific record of decision issued by the Forest Service nationwide subsequent to 1994.

29.     The Project also includes some habitat restoration and recreation improvements.

30.     The Project will result in the reduction of habitat available for several species in the project area.  This includes habitat for Sitka black-tailed deer, bears, grouse, goshawks, Alexander Archipelago wolves, and small endemic mammals.  The Project may cause a significant restriction of subsistence hunting for deer.  The FEIS and the Record of Decision acknowledge these facts.

31.     Neither the DEIS nor the FEIS provides site-specific information about logging or roadbuilding.  The FEIS states: "The [Prince of Wales Landscape Level

Analysis] Project proposes to harvest timber and build roads under all action alternatives, but it is unknown at this time where on the landscape this would occur."  FEIS at 3-234.

32.     The FEIS's Response to Comments states that "it is not possible to determine all of the direct, indirect, or cumulative impacts to wildlife habitat or connectivity that could result from this project before implementation."  FEIS, Appendix D at D-58.  Nevertheless, the Forest Service states that it is approving this Record of Decision "without the need for additional NEPA analysis."  *Id.*, Appendix B at B-1.

33.     During implementation, the Forest Service does not intend to conduct any further subsistence hearings or findings under section 810(a)(2)-(3) of ANILCA, 16 U.S.C. § 3120(a)(2)-(3).  The Implementation Plan included in the Record of Decision does not call for any further subsistence hearings or findings.

34.     In the 1980's, the Forest Service lost at least two court decisions for failure to provide adequate site-specific information and analysis in the environmental impact statements (EISs) for Tongass timber sales.  *City of Tenakee Springs v. Block*, 778 F.2d 1402 (9th Cir. 1985); *City of Tenakee Springs v. Courtright*, No. J86-024-CIV, 1987 WL 90272 (D. Alaska June 26, 1987).  In subsequent Tongass timber sale EISs, the Forest Service began including comprehensive, detailed quantitative and qualitative descriptions of the logging and road access plans for each harvest unit proposed for sale.  When it did so, the courts upheld the adequacy of the site-specific information.  *Stein v. Barton*, 740 F. Supp. 743, 748-49 (D. Alaska 1990).

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,     12
Case No. 1:19-cv-00006-SLG

35.     When the Forest Service revised its programmatic land and resource management plan for the Tongass in 1997, the agency included standards and guidelines requiring site-specific information about timber cutting units and roads in project planning.  For timber cutting units, the plan called for "unit cards" documenting mitigation and protection measures to be included in NEPA documents.  U.S. Forest Service, Land and Resource Management Plan, Tongass National Forest at 4-98 (TIM114.XII.A) (1997).  For roads, the plan required the agency, during project planning, to "identify resource concerns and site specific mitigation measures" and to "[c]learly document" them to facilitate implementation.  *Id.* at 4-103 (TRAN212.I.D).

36.     When the Forest Service amended the land and resource management plan in 2008, the agency restated the requirement for unit cards in NEPA documents and expanded it, requiring "a map with relevant resource features."  U.S. Forest Service, Tongass National Forest, Land and Resource Management Plan at 4-71 (TIM4.I.C) (2008).  For roads, the 2008 amendment included a provision that added a hyphen but was otherwise identical to TRAN212.I.D from the 1997 plan.  *Id.* at 4-81 (TRAN3.I.D).

37.     When the Forest Service amended the land and resource management plan again in 2016, the agency again restated the requirement for unit cards.  The 2016 Amended Forest Plan modified that standard to specify that the cards would be in electronic format and would be included with both draft and final NEPA documents. This standard also added a reference to a provision of the Forest Service Handbook.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*     13
Case No. 1:19-cv-00006-SLG

2016 Amended Forest Plan at 4-68 (TIM3.I.C). For roads, the 2016 Amended Forest Plan included a provision identical to TRAN3.I.D as it appeared in the 2008 amendment. *Id.* at 4-77 (TRAN3.I.D).

38.     The purpose of the plan provisions described in paragraphs 35-37 above was to ensure compliance with NEPA in site-specific project planning.

39.     The 2016 Amended Forest Plan is the currently applicable plan for the Tongass.

40.     In the DEIS and FEIS for the Prince of Wales Project, the Forest Service did not include unit cards. The agency has taken the position that the timing component of TIM3.I.C—requiring that the unit cards be included in draft and final NEPA documents—is no longer applicable. The Forest Service has never adopted a plan amendment or revision to remove or modify TIM3.I.C.

41.     During the planning process for the Prince of Wales Project, the Forest Service did not identify site-specific mitigation measures for roads. The Forest Service has never adopted a plan amendment or revision to remove or modify TRAN3.I.D.

42.     After issuing the FEIS and signing the Record of Decision, the Forest Service held a public workshop on April 6, 2019 in Klawock, Alaska (on Prince of Wales Island). At this workshop, the Forest Service provided maps indicating four general areas proposed for the first timber sale to take place under the Project. The agency indicated it anticipates offering 50 mmbf of old-growth timber in the first sale. This information is

currently posted online and available for a 30-day public comment period.  Comments are

due May 13, 2019.

43.     The Forest Service anticipates offering the first timber sale under the

Project by the end of fiscal year 2019.  Logging or road work on the timber sale may

commence before the end of fiscal year 2019.

**COUNT I**
**(National Environmental Policy Act)**

44.     NEPA requires federal agencies to prepare an EIS on any proposal for

"major Federal actions significantly affecting the quality of the human environment." 42

U.S.C. § 4332(2)(C).

45.     NEPA regulations require federal agencies to discuss the direct, indirect,

and cumulative effects of their actions in the EIS.  40 C.F.R. §§ 1502.16, 1508.8.  The

EIS should provide a clear basis for choice among alternatives.  40 C.F.R. § 1502.14.

46.     The FEIS does not provide site-specific information about the Prince of

Wales Project or its impacts.  The FEIS does not disclose specific locations where

logging or road construction will occur.  As of March 2019, the Forest Service had not

determined where within the project area the logging or road construction would take

place.

47.     By using this approach, the FEIS does not adequately address the direct,

indirect, and cumulative effects of the Project on the human environment.  The FEIS does

not provide a clear basis for choice among alternatives.  The FEIS does not contain

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*     15
Case No. 1:19-cv-00006-SLG

sufficient information to foster informed decision-making or informed public participation.  For these reasons, the FEIS violates NEPA, 42 U.S.C. § 4332(2)(C), and is therefore "not in accordance with law" under 5 U.S.C. § 706(2)(A) and "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D).

**COUNT II**
**(Alaska National Interest Lands Conservation Act)**

48.    ANILCA requires federal land agencies to evaluate the effects of, and alternatives to, any disposition of federal public land on subsistence uses and needs. 16 U.S.C. § 3120(a).  Where the disposition of the land may significantly restrict subsistence uses, the agency is required to conduct hearings in the vicinity of the area involved and to make certain findings justifying the restriction.  *Id.* § 3120(a)(2)-(3). When an EIS is required, the agency is required to include the hearing and the findings in the EIS.  *Id.* § 3120(b).

49.    The FEIS and Record of Decision acknowledge that the Prince of Wales Project may cause a significant restriction of subsistence uses of deer.  The Forest Service conducted hearings and made findings under ANILCA section 810.

50.    The FEIS does not provide site-specific information about the Prince of Wales Project or its effects on subsistence uses.  The FEIS does not disclose specific locations where logging or road construction will occur.  As of March 2019, the Forest Service had not determined where within the project area the logging or road construction would take place.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*   16
Case No. 1:19-cv-00006-SLG

51.     By using this approach, the FEIS does not adequately address the direct, indirect, and cumulative effects of the Project on subsistence uses.  The FEIS does not provide a clear basis for choice among alternatives.  The FEIS does not contain sufficient information to foster informed decision-making or informed public participation.  The FEIS does not provide adequate information for the required subsistence hearings or findings required by ANILCA § 810(a)(2)-(3).  16 U.S.C. § 3120(a)(2)-(3).  For these reasons, the FEIS violates ANILCA section 810, 16 U.S.C. § 3120, and is therefore "not in accordance with law" under 5 U.S.C. § 706(2)(A) and "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D).

## COUNT III
### (National Forest Management Act)

52.     NFMA requires that "[r]esource plans and permits, contracts, and other instruments for the use and occupancy of National Forest System lands shall be consistent with the land management plans."  16 U.S.C. § 1604(i).  The Forest Service has adopted the 2016 Amended Forest Plan as the land management plan for the Tongass National Forest.

53.     The 2016 Amended Forest Plan establishes "standards," which are "mandatory requirements or minimums that must be met" in decision-making.  2016 Amended Forest Plan at 1-4.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*     17
Case No. 1:19-cv-00006-SLG

54.     These standards include a requirement that "[t]imber harvest unit cards…will be provided electronically when Draft or Final NEPA documents and decisions are published." *Id.* at 4-68 (TIM3.I.C).

55.     Neither the DEIS nor the FEIS included unit cards.  The Forest Service stated it will not prepare unit cards until the implementation phase.  Implementation began after the Record of Decision was signed.

56.     For transportation, including roads, the 2016 Amended Forest Plan includes the following standard:  "During project planning, identify resource concerns and site-specific mitigation measures.  Clearly document these mitigation measures to facilitate project implementation and monitoring." *Id.* at 4-77 (TRAN3.I.D).

57.     During project planning for the Prince of Wales Project, the Forest Service did not identify resource concerns for the roads.  During project planning for the Prince of Wales Project, the Forest Service did not identify site-specific mitigation measures for the roads.  The Forest Service intends to develop site-specific design and mitigation measures during implementation.

58.     The Forest Service's failure to provide unit cards for timber cutting in the DEIS and FEIS is not consistent with the 2016 Amended Forest Plan.  This failure is therefore a violation of NFMA, 16 U.S.C. § 1604(i), "not in accordance with law" under 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D).  The Forest Service's failure to identify resource concerns or site-

specific mitigation measures for new roads during project planning is not consistent with the 2016 Amended Forest Plan. This failure is therefore a violation of NFMA, 16 U.S.C. § 1604(i), "not in accordance with law" under 5 U.S.C. § 706(2)(A), and "without observance of procedure required by law" under 5 U.S.C. § 706(2)(D).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

1.      Enter a declaratory judgment that the failure to include site-specific information about logging and roads in the FEIS violates NEPA;

2.      Enter a declaratory judgment that the failure to include site-specific information about logging and roads in the FEIS violates ANILCA section 810;

3.      Enter a declaratory judgment that Defendants violated NFMA and the 2016 Amended Forest Plan by failing to provide unit cards with the DEIS or FEIS or site-specific road planning information during the planning process;

4.      Set aside the Record of Decision or portions of it deemed not in compliance with law;

5.      Enter preliminary and permanent injunctive relief as needed to prevent irreparable harm from implementation of the Prince of Wales Project until Defendants comply with NEPA, ANILCA, NFMA, and the 2016 Amended Forest Plan;

6.      Award Plaintiffs the costs of this action, including reasonable attorneys' fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*      19
Case No. 1:19-cv-00006-SLG

7.      Grant such other relief as this Court deems just and proper.

Respectfully submitted this 7th day of May, 2019.

*s/ Thomas S. Waldo*

Thomas S. Waldo (AK Bar No. 9007047)
EARTHJUSTICE

*s/ Olivia Glasscock*

Olivia Glasscock (AK Bar No. 1809072)
EARTHJUSTICE

*Attorneys for Southeast Alaska Conservation
Council; Alaska Rainforest Defenders;
Center for Biological Diversity; Sierra Club;
Defenders of Wildlife; Alaska Wilderness
League; National Audubon Society; and
Natural Resources Defense Council.*