IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL; ALASKA RAINFOREST DEFENDERS; CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; DEFENDERS OF WILDLIFE; ALASKA WILDERNESS LEAGUE; NATIONAL AUDUBON SOCIETY; and NATURAL RESOURCES DEFENSE COUNCIL,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; DAVID SCHMID, in his official capacity as United States Forest Service Region 10 Regional Forester; and EARL STEWART, in his official capacity as Forest Supervisor for the Tongass National Forest,<br><br>*Defendants*. | Case No. 1:19-cv-00006-SLG |

**DECLARATION OF ROBIN D. SILVER, M.D.**

I, Robin D. Silver, M.D., declare as follows:

1.  The facts set forth in this declaration are based on my personal knowledge and if called as a witness, I could and would competently testify thereto under oath.

2.  I reside in Flagstaff, Arizona. I am a member, senior staff, and one of the original founders of the Center for Biological Diversity ("the Center") (formerly the Southwest Center for Biological Diversity).

3.  The Center is a nonprofit corporation incorporated in the State of California. The Center works through science and environmental law to advocate for the protection of endangered, threatened, and rare species and their habitats throughout the United States and abroad. The Center has more than 69,000 active members. Center members reside throughout the United States, including in Alaska, as well as in other countries. The Center works to ensure the long-term health and viability of animal and plant communities across the United States and elsewhere, and to protect the habitat these species need to survive. The Center believes that the health and vigor of human societies and the integrity and wildness of the natural environment are closely linked.

4.  As part of its mission, the Center provides oversight of governmental programs, policies, and activities that affect wildlife and endangered species. The Center has been at the forefront of efforts to hold the government accountable for its obligations under the Endangered Species Act ("ESA"), National Environmental Policy Act ("NEPA"), National Forest Management Act ("NFMA"), and other laws protecting

wildlife and their habitat. The Center regularly engages in protection efforts and campaigns to ensure that our nation's environmental laws are enforced with respect to wildlife and its habitat.

5.     The Center actively develops and disseminates to its members; policymakers; local, state, federal and international governmental officials; nonprofit organizations; and interested members of the general public a wide array of educational and informational materials concerning the status of and threats to wildlife species, including threatened, endangered, and rare species and their habitats.

6.     The Center has been actively involved in protecting Alaska's wildlife since the early 1990s. With regard to the Tongass National Forest, in 1994, the Center filed a legal petition with the federal government to protect the Queen Charlotte goshawk, a species sensitive to the fragmentation of natural landscapes by roads and logging that is found only in southeast Alaska (including Prince of Wales Island) and coastal British Columbia. The previous year, the Biodiversity Legal Foundation, which formally merged with the Center in 2003, filed a petition requesting ESA listing of the Alexander Archipelago wolf, another species found in, and threatened by development of, the Tongass National Forest and Prince of Wales Island.  In 2011 the Center, in conjunction with Greenpeace, filed a new petition requesting that the Alexander Archipelago wolf be listed under the ESA.  And in 2014, the Center filed a lawsuit to ensure that the U.S. Fish and Wildlife Service ("FWS") met its deadlines under the ESA.  FWS ultimately decided

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,     2
Case No. 1:19-cv-00006-SLG
**Exhibit 13, page 3 of 10**

Case 1:19-cv-00006-SLG     Document 10-13     Filed 07/12/19     Page 3 of 10

not to list the wolf in January 2016.

7. The Center has also expended significant time and resources in actively monitoring and aggressively advocating for the protection of these imperiled species' habitats in the Tongass National Forest. For example, in 2014, the Center filed a petition to protect a keystone Tongass tree species, the Alaska yellow-cedar, under the ESA. This effort also included analyzing the adequacy of wildlife management strategies adopted in the Tongass Land Management Plan and participating in the NEPA processes analyzing these strategies at the programmatic and site-specific level. The Center frequently reviews and utilizes NEPA documentation for decisions affecting Tongass wildlife and wildlands in its advocacy work and outreach to members. The Center has repeatedly highlighted in NEPA comments and in public forums the Forest Service's failure to adequately consider and disclose adverse impacts to wildlife and wildlands in the Tongass Land Management Plan and the timber sales authorized under the plan. The Center has also participated in the administrative processes for several timber sales in the Tongass National Forest in recent years.

8. The Center has been actively engaged in efforts to protect the Tongass National Forest's remaining roadless areas, including those located on Prince of Wales Island, from logging and roadbuilding for more than a decade. The Center submitted comments to the Forest Service in public comment periods during the NEPA process promulgating the 2001 Roadless Area Conservation Rule (Roadless Rule). The Center

also sent alerts to its members urging their participation in those public comment periods. The goal of the Center's comments and its membership alerts was to protect remaining roadless areas, including those located in the Tongass National Forest. Subsequent to the administrative processes, the Center also participated in a number of lawsuits to uphold the Roadless Rule. For example, in 2009, the Center was one of the plaintiffs that successfully challenged the Forest Service's decision to exempt the Tongass National Forest from the Roadless Rule.

9. The Center has worked to protect remaining old growth forest and its dependent wildlife on islands adjacent to Prince of Wales Island. On Kuiu Island, the Center, along with other concerned environmental and recreational organizations, submitted comments, on September 2, 2016 and March 8, 2018, and filed a lawsuit on May 16, 2018 to protect the old growth, the unique Kuiu Island marten populations, and Alexander Archipelago wolf. *Southeast Alaska Conservation Council v. Stewart*, 1:18-cv-00005-HRH (D. Alaska.).

10. The Center actively participated in the administrative process provided by the Forest Service on the Prince of Wales Landscape Level Analysis Project ("Prince of Wales Logging Project"). On June 18, 2018, the Center joined other conservation groups in submitting substantive comments on the Prince of Wales Logging Project and the associated Draft Environmental Impact Statement ("EIS"). On December 21, 2018, the Center joined others in filing objections to the Forest Service's Final EIS and proposed

decision to approve the Prince of Wales Logging Project.

11.     The Center's staff and members view, photograph, and otherwise enjoy Alexander Archipelago wolves, Queen Charlotte goshawks, Sitka black-tailed deer, martens, black bears, and other wildlife in the Tongass National Forest, including in areas affected by the Prince of Wales Logging Project.  Center staff and members derive aesthetic, spiritual, professional, and moral benefit from being able to look for, watch, and listen to Alexander Archipelago wolves, Sitka black-tailed deer, martens, black bears, and other wildlife in their natural habitat.  Center staff and members also derive pleasure just from knowing that these animals exist, even if they are never able to see them.  The Center's members and staff rely on the Center to protect their enjoyment of Tongass wildlife through the Center's participation in administrative processes, lawsuits, and public education.

12.     The Center's staff and members would be harmed if the Forest Service moves forward with the Prince of Wales Logging Project.  The Center's staff and members' interests in viewing, observing, and photographing wildlife, and otherwise using and enjoying Prince of Wales Island, would be negatively affected by the planned logging of old-growth forests.

13.     The Center and its members also have an interest in the rule of law, an expectation that federal agencies such as Forest Service will comply with the procedural mandates of laws that guarantee an informed public and informed decision-making.  The

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,     5
Case No. 1:19-cv-00006-SLG
**Exhibit 13, page 6 of 10**

Case 1:19-cv-00006-SLG     Document 10-13     Filed 07/12/19     Page 6 of 10

Forest Service's decision to proceed with the Prince of Wales Logging Project pursuant to a vague and unlawful environmental analysis harm these procedural interests of the Center and its members.

14. The Center's staff and members' interests in Prince of Wales Island would be protected only if the plaintiffs prevail in this lawsuit and the Prince of Wales Logging Project is set aside and vacated, and the Forest Service is prevented from implementing the project unless until it prepares lawful, site-specific environmental analysis. Such a court decision would also protect the Center and its members' interest in the rule of law.

15. In sum, the Center has a strong organizational interest in the species and habitats of the Tongass National Forest, including Prince of Wales Island, and the proper and lawful management of the region by the agencies entrusted to make decisions regarding impacts to those resources. In advocating for these interests, the Center represents itself and its staff and members. Center staff and members have visited and will continue to visit Prince of Wales Island and adjacent areas for various purposes, including recreation, aesthetic enjoyment, wildlife watching, and photography. The Prince of Wales Logging Project would irreversibly harm the Center and its staff and members' interests in the area and the species that depend on the area.

16. In addition to being a founder of the Center, and a semi-retired emergency-room physician, I am also a professional photographer specializing in imperiled wildlife and the habitats required for their survival. I have been a professional photographer for

three decades. I am a member of the National Press Photographers Association and the Professional Photographers of America. I donate photographic images for educational purposes and for the fundraising benefit of those who endeavor to preserve imperiled wildlife and their habitats. I also sell photographic images for profit. My photographs frequently appear in the press and in magazines locally and nationally.

17. I have visited the Tongass National Forest, including Prince of Wales Island. I was last on the Tongass National Forest in 2018. I was last on Prince of Wales Island in 1998. I have photographed extensively the wildlife of the Tongass, including, but not limited to Alexander Archipelago wolves, brown and black bears, bald eagles and Sitka black-tailed deer.

18. During my visits to the Tongass National Forest, I enjoy wildlife and bird watching, hiking, enjoying the scenery, seeking spiritual and psychic renewal, and making photographs. My use and enjoyment of these areas, and my ability to make professional wildlife images, are dependent on good environmental quality and preservation of a landscape where native wildlife can survive.

19. At the time of my visit to Prince of Wales Island in the summer of 1998, I was traveling around the Tongass National Forest by boat, photographing wildlife, and exploring the area. We anchored in Thorne Bay.

20. I have made arrangements to return to Prince of Wales Island this coming July 2019. During my visit, I look forward to photographing wildlife and old growth

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*, 7
Case No. 1:19-cv-00006-SLG
**Exhibit 13, page 8 of 10**

Case 1:19-cv-00006-SLG   Document 10-13   Filed 07/12/19   Page 8 of 10

forests, and in hiking and recreating on the island. I am traveling to Prince of Wales Island to visit and photograph what is left of Prince of Wales increasingly rare old growth forest. Old growth forest support many of the wildlife species I enjoy seeing and photographing.

21. The Forest Service intends to move forward with allowing and authorizing a destructive and damaging old-growth timber sale on Prince of Wales Island based on an inadequate environmental analysis. The Center detailed many objections to the Prince of Wales Logging Project in our June 18, 2018 Draft EIS comment letter and our December 21, 2018 objections, but in general the rarity of surviving old-growth and the risk that this rarity extends to native and endemic wildlife is historically inappropriate. The logging authorized under the project threatens my interest in the area. More specifically, if the Prince of Wales Island Logging Project is allowed to proceed, my interests in returning to Prince of Wales Island will be negatively affected. My enjoyment of the area would be ruined by seeing more large stumps instead of a beautiful, remnant, and now rare karst, old-growth forest.

22. Large old growth grow on two basic land formations in Southeast Alaska, karst and alluvium. Karst is land that developed on water soluble limestone and marble. Karst The largest spruce tree forest once found on karst are now gone owing to logging; however, forests of very large western hemlocks and redcedars still survive on the karst lands of Prince of Wales Island.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,   8
Case No. 1:19-cv-00006-SLG
**Exhibit 13, page 9 of 10**

Case 1:19-cv-00006-SLG   Document 10-13   Filed 07/12/19   Page 9 of 10

23. My interests in photography on Prince of Wales Island are threatened by the Prince of Wales Island Logging Project, as the scenery, including old growth forest, would be destroyed, and there would be less of a chance of seeing rare wildlife such as Queen Charlotte goshawk, Alexander Archipelago wolf and the endemic flying squirrel and ermine. These changes, especially the ones involving loss of old-growth forests and species that depend on those forests, will result in irreparable harm to my interests in this area. Specifics of the inadequate and illegal treatment of rare wildlife by the Forest Service in the attempt to promote the Prince of Wales Logging Project are detailed in our June 18, 2018, DEIS comments.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Dated this 11th day of June, 2019, in Flagstaff, Arizona.

_____
Robin D. Silver, M.D.