Thomas S. Waldo
Olivia Glasscock
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: twaldo@earthjustice.org
E: oglasscock@earthjustice.org

*Attorneys for Plaintiffs Southeast Alaska Conservation Council; Alaska Rainforest
Defenders; Center for Biological Diversity; Sierra Club; Defenders of Wildlife; Alaska
Wilderness League; National Audubon Society; and Natural Resources Defense Council.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL; ALASKA RAINFOREST DEFENDERS; CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; DEFENDERS OF WILDLIFE; ALASKA WILDERNESS LEAGUE; NATIONAL AUDUBON SOCIETY; and NATURAL RESOURCES DEFENSE COUNCIL, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; DAVID SCHMID, in his official capacity as United States Forest Service Region 10 Regional Forester; and EARL STEWART, in his official capacity as Forest Supervisor for the Tongass National Forest, <br><br> *Defendants*. | Case No. 1:19-cv-00006-SLG |

**MOTION FOR PRELIMINARY INJUNCTION**

## INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 65(a) and this Court's scheduling

order (Doc. 7), Plaintiffs move for a short-term preliminary injunction against road

construction and logging in the Twin Mountain Timber Sale authorized under the Prince

of Wales Landscape Level Analysis project (the Project), as specified in the proposed

order. Plaintiffs request a decision on this motion by September 25, 2019, if possible, so

that the Forest Service and any bidders are aware of the Court's ruling before entering

into any contracts. The Forest Service plans to award the sale contract on September 26,

2019.

Briefing on the merits of this case will be complete by August 23, 2019, with a

record appendix filed by September 6, 2019. Doc. 7 at 2, ¶7, 8. The agency has

indicated it plans to offer 35 million board feet (mmbf) of old-growth timber for sale in

mid- to late-August. Doc. 6 at 2-3, ¶3. The Forest Service has posted draft unit cards for

the Twin Mountain Timber Sale. U.S. Forest Serv., Twin Mountain Timber Sale Draft

Unit Cards, https://www.fs.usda.gov/Internet/FSE_DOCUMENTS/fseprd641767.pdf

(last visited Aug. 15, 2019) (Twin Mountain Timber Sale Draft Unit Cards); *see* Ex. A at

5 (map with Value Comparison Units (VCU) included in sale). [1] Counsel for Defendants

has informed counsel for Plaintiffs that the agency anticipates awarding a contract for this

sale on September 26, 2019. Logging or road construction could commence as early as

---

[1] The Forest Service has never produced a map of the Twin Mountain sale. A GIS
specialist in Plaintiffs' law firm created the map in Exhibit A for purposes of this motion.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,                    1
Case No. 1:19-cv-00006-SLG

one day later:  September 27, 2019.  *See* Doc. 6 at 4-5, ¶5.  Plaintiffs recognize that this Court may not be able to render a decision on the merits before September 25 and therefore request this short-term injunction to maintain the status quo pending a final ruling.

The logging and road construction proposed in the Twin Mountain sale would cause irreparable harm to Plaintiffs and their interests in practicing subsistence uses, wildlife viewing, recreation, education, and commercial fishing.  The requested injunction would defer at most a month or two of operations before the end of this year's normal timber operating season.  This request does not apply to the recreation management, watershed improvement, or restoration activities authorized in the Project.  This motion does not repeat the issues addressed in the merits briefing, but focuses on the grounds for a short-term injunction.

## ARGUMENT

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008).  The Ninth Circuit employs a "sliding scale" approach to the elements of the preliminary injunction test, such that "a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,          2
Case No. 1:19-cv-00006-SLG

Cir. 2011). It is not necessary to address the sliding scale approach here, because

Plaintiffs can establish that each of the elements strongly calls for a temporary injunction

to prevent the irretrievable loss of old-growth habitat from logging and road construction.

## I.      Plaintiffs are likely to succeed on the merits.

Plaintiffs' opening brief on the merits establishes three legal violations. Doc. 10.

Under the National Environmental Policy Act (NEPA), *City of Tenakee Springs v. Block*,

778 F.2d 1402 (9th Cir. 1985), controls this case and establishes that the Final

Environmental Impact Statement (FEIS) is inadequate for failure to provide site-specific

detail. *See* Doc. 10 at 22-36. Section 810 of the Alaska National Interest Lands

Conservation Act (ANILCA) demands at least as much site-specificity when evaluating

impacts to subsistence uses and resources, and by failing to meet that demand, the Forest

Service has violated ANILCA. *Id.* at 36-39. The Forest Service also violated the plain

language of its own forest plan requiring unit cards in draft and final EISs, resulting in a

violation of the National Forest Management Act. *Id.* at 39-42. The violations go to the

very heart of these laws, breaching basic requirements enacted to provide the public and

decisionmakers with detailed information about agency actions that cause significant

harm to people and the environment.

## II.     Plaintiffs will suffer irreparable harm in the absence of preliminary relief.

"Environmental injury, by its nature, can seldom be adequately remedied by

money damages and is often permanent or at least of long duration, *i.e.*, irreparable."

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,                3
Case No. 1:19-cv-00006-SLG

*Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 545 (1987). More specifically with regard to old-growth logging, "[t]he logging of mature trees, if indeed incorrect in law, cannot be remedied easily if at all. Neither the planting of new seedlings nor the paying of money damages can normally remedy such damage. The harm…is irreparable for the purposes of the preliminary injunction analysis." *League of Wilderness Defs./Blue Mountain Biodiversity Project v. Connaughton*, 752 F.3d 755, 764 (9th Cir. 2014). Indeed, the FEIS describes the logging of old growth as an "irretrievable commitment," because old-growth characteristics would not return "for 150 years or more." 833_2167 at 001519 (FEIS at 61). Courts consistently characterize the harms to plaintiffs' interests from proposed logging operations as irreparable harm. *See Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1299 (9th Cir. 2003) (citing cases); *All. for the Wild Rockies*, 632 F.3d at 1135 ("prevent[ing] the use and enjoyment…of 1,652 acres of the forest…is hardly a de minimus injury"); *Conservation Cong. v. U.S. Forest Serv.*, 803 F. Supp. 2d 1126, 1132 (E.D. Cal. 2011) (irreparable harm likely because of "loss of over 500 acres of habitat" from proposed logging project). As explained in the opening brief, the logging and roadbuilding activities authorized in the Project would cause irreparable harm to Plaintiffs' interests in hunting, gathering, commercial and subsistence fishing, recreation, research, wildlife viewing, and spiritual and aesthetic enjoyment. Doc. 10 at 16-21, 45-46.

### III. The balance of equities tips sharply in favor of Plaintiffs.

The balance of the equities tips in favor of Plaintiffs because harm to old-growth forest will last hundreds of years. In contrast, any delay in logging will last only for the short period of time between September 27, 2019 and whenever the Court is able to render a decision in a case already fully briefed, or the end of the 2019 logging season—whichever occurs first. The Ninth Circuit has held that "when environmental injury is 'sufficiently likely, the balance of harms will usually favor the issuance of an injunction to protect the environment.'" *Idaho Sporting Cong. v. Alexander*, 222 F.3d 562, 569 (9th Cir. 2000) (quoting *Sierra Club v. U.S. Forest Serv.*, 843 F.2d 1190, 1195 (9th Cir. 1988) (quoting *Amoco Prod. Co.*, 480 U.S. at 545)). "Only the portion of the [economic] harm that would occur while the preliminary injunction is in place" should be weighed against plaintiffs' irreparable injuries caused by logging, and the "balance of equities tips toward the…plaintiffs, because the harms they face are permanent." *League of Wilderness Defs.*, 752 F.3d at 765. Similarly, in *Idaho Sporting Congress*, the court found that the "financial hardship is outweighed by the fact the old growth forests plaintiffs seek to protect would, if cut, take hundreds of years to reproduce." 222 F.3d at 569 (internal quotations removed).

### A. Plaintiffs will suffer permanent harm if logging proceeds this fall.

Plaintiffs and their members would be immediately, substantially, and permanently harmed by the implementation of the logging and road construction activities authorized in the Twin Mountain sale, which includes areas on the north end of

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,    5
Case No. 1:19-cv-00006-SLG

Prince of Wales Island. *See* Ex. A at 5. Logging or road construction in any of these areas would permanently harm Plaintiffs' interests and exacerbate existing habitat concerns.

Plaintiffs' ways of life are integrally intertwined with their use of Prince of Wales Island and the surrounding areas. They use the project area for subsistence and commercial hunting, fishing, and gathering. Doc. 10-1 at 2-3, ¶¶3-4; Doc. 10-2 at 2, ¶3; Doc. 10-7 at 1-2, 4-5, ¶¶4, 10, 11; Doc. 10-12 at 1,10, ¶¶3, 20. For example, long-time resident David Beebe relies on Tuxekan Passage, Sea Otter Sound, Tonowek Narrows, El Capitan Passage, Shakan Pass and the surrounding areas for his subsistence activities both on- and off-shore. Doc. 10-1 at 4, ¶5. These areas are included in the Twin Mountain sale. Twin Mountain Timber Sale Draft Unit Cards at 19-44, 76-79, 84-101, 132-164, 169-174, 193-223, 275-82 (units proposed for sale within VCUs 5371, 5580, 5710, 5871, and 5890); Ex. A at 5. Similarly, Don Hernandez uses areas in the Red Creek, Big Creek, Straight Creek, Buster Creek, Alder Creek, Flicker Creek and Baker Creek watersheds for hunting and fishing. Doc. 10-7 at 4, ¶8. These watersheds also fall within areas proposed for this sale. Twin Mountain Timber Sale Draft Unit Cards at 102-31, 248-60, 265-301, 309-17 (units proposed for sale within VCUs 5290, 5300, 5320, 5330, 5340, 5350, and 5390); Ex. A at 5.

Beyond subsistence and commercial uses, Plaintiffs value the remaining old-growth habitat for its aesthetic qualities, which provide recreation, photography, wildlife

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.,*　　　　　　　6
Case No. 1:19-cv-00006-SLG

viewing, and spiritual opportunities. Doc. 10-1 at 7-8, 14-15, 18-19, ¶¶8, 17, 22; Doc.

10-4 at 6, ¶13; Doc. 10-5 at 3-7, ¶¶8, 10, 12; Doc. 10-7 at 5, 8, ¶¶10, 14; Doc. 10-12 at 6-

10, ¶¶12-13, 17, 19. These opportunities would be permanently destroyed because—by

the Forest Service's own description—logging and road construction in old-growth forest

is an "irretrievable commitment," and old-growth characteristics would not return "for

150 years or more." 833_2167 at 001619 (FEIS at 61). Bob Claus values the

"unmatched natural beauty" and "obvious mix of tree species and ages, with different

coloration marking the diversity" found in old-growth stands, unlike the previously

logged areas that are "reminiscent of industrial development" and "hostile and poor in

resources for wildlife." Doc. 10-2 at 2, ¶6. David Beebe "seek[s] natural visual and

audio soundscapes and viewscapes with wildlife and untouched forest settings because

they are regarded as quite rare, yet extremely interesting and enjoyable by much of the

human population in general," and "visual elements of clearcuts and logging roads

severely detract from [his photography], and distract the viewer from the main subjects

and intentions of [the] imagery." Doc. 10-1 at 6-7, ¶7. Elsa Sebastian cites the area

between Exchange Cove and Salmon Bay—much of which is within this sale (Twin

Mountain Timber Sale Draft Unit Cards at 265-274, 283-285 (units proposed for sale

within VCUs 5350 and 5390); Ex. A at 5)—as "two of the richest estuaries on the north

end of the island" that "serve as a vivid reminder of how productive and beautiful Prince

of Wales is." Doc. 10-12 at 5, ¶11. She "worr[ies] about the resilience of [her] home

community if North Prince of Wales continues to be stripped of its beauty and abundance." *Id.* at 6, ¶12.

If these activities are not enjoined, Plaintiffs will begin suffering lasting harms this fall during ongoing operations. Don Hernandez highlights that even in the earliest stages of logging, he would suffer reduced enjoyment of his usual activities of gathering food and viewing wildlife: "these are not the kind of activities I would want to be doing in the midst of ongoing logging operations." Doc. 10-7, at 5-6, ¶10. Elsa Sebastian has a deer-hunting trip planned in northern Prince of Wales this September through October. Doc. 10-12 at 8, ¶15. David Beebe depends on Prince of Wales Island as a place for subsistence hunting and gathering, particularly in the fall. Doc. 10-1 at 19-20, ¶24. Natalie Dawson finds activity in old-growth forest on Prince of Wales Island and the surrounding waters to be: "much more wonderous than kayaking or hiking through an area where a timber sale [is] currently in place, with machinery, crews, field camps, and waste from these activities building a strong presence in a previously pristine environment." Doc. 10-4 at 7, ¶14. Prince of Wales cabin owner Liz Dodd states: "I couldn't see much sense in incurring [the expense to get to the island] to go where I'm going to have to listen to chain saws, helicopters, and barges." Doc. 10-5 at 6-7, ¶12. These harms represent the very first stages of the harms from logging and road construction that will persist throughout the lives of Plaintiffs' members and those of generations to come.

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,                    8
Case No. 1:19-cv-00006-SLG

Many of Plaintiffs' interests in old-growth habitat relate to wildlife. Wildlife in the Project area, including deer, wolves, and small endemic mammals, have already experienced significant stress from decades of past logging. *See* 833_2079 at 071471 (2016 Plan FEIS at 3-288, Tbl. 3.10-16); 833_2167 at 001681 (FEIS at 223); 833_2079 at 071472 (2016 Plan FEIS at 3-289). Indeed, the northern part of the island where this timber sale is proposed has the lowest remaining percent of deer habitat capability (54%) of any in the Tongass. *Id.* at 071471 (2016 Plan FEIS at 3-288, Tbl. 3.10-16).

Despite existing impacts from past logging, the project area remains important for old-growth dependent species and the interests of the people who use and value them. Doc. 10-5 at 4-5, ¶10. If logging and road construction begin this fall, before the Court is able to rule on the merits, Plaintiffs will suffer permanent harm.

**B.  A temporary injunction will cause only a short-term delay in logging for Defendants.**

In sharp contrast, a preliminary injunction would cause only minimal, temporary inconvenience to the Forest Service. The Forest Service has not accepted any bids or awarded any contracts for the Twin Mountain sale. The Forest Service does not anticipate awarding a contract until September 26, 2019, and logging cannot begin until that has been finalized. Doc. 6 at 2-3, ¶3. Because winter conditions that prevent logging would set in shortly thereafter—as early as October—the requested temporary injunction would not likely delay more than a month or two of logging and road construction this year. *See* Ex. B at 2 (U.S. Forest Serv., Big Thorne Stewardship Contract (Contract

2400-13) at 9 (Sept. 2004)) (logging contract on Prince of Wales Island stating the normal operating season is April 1 to October 31).  There is plenty of time for the Court to rule on the merits of this case before the 2020 logging season, which normally begins in April.  *Id.*  Thus, the harm caused by delaying the implementation of the timber sale only until this Court is able to reach a decision on the merits would be minimal.

## IV.     A preliminary injunction advances the public interest.

The public interest favors granting this injunction.  The Ninth Circuit recognizes "the public interest in careful consideration of environmental impacts before major federal projects go forward, and…[has] held that suspending such projects until that consideration occurs 'comports with the public interest.'"  *All. for the Wild Rockies*, 632 F.3d at 1138 (quoting *S. Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718, 728 (9th Cir. 2009).  This interest is especially heightened when the impacts are to forest that will take hundreds of years to regain its old-growth characteristics.  *Seattle Audubon Soc'y v. Evans*, 771 F. Supp. 1081, 1096 (W.D. Wash. 1991), *aff'd in part and rev'd in part on other grounds*, 952 F.2d 297 (9th Cir. 1991). The interest in carefully considering impacts of projects prior to authorization is embodied in NEPA, and the public also has on overarching interest in its government abiding by the laws and regulations governing it. *See, e.g. Enyart v. Nat'l Conference of Bar Exam'rs, Inc.*, 630 F.3d 1153, 1167 (9th Cir. 2011); *East Bay Sanctuary Covenant v. Trump*, 909 F.3d 1219, 1254-55 (9th Cir. 2018).

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,                    10
Case No. 1:19-cv-00006-SLG

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court enter a preliminary injunction temporarily preventing logging, road construction, and other ground-disturbing activities in the Twin Mountain Timber Sale pending a final judgment on the merits of this case.  Plaintiffs request the Court enter this injunction, if possible, by September 25, 2019, before any contract is awarded.

Respectfully submitted this 15th day of August, 2019.

> *s/ Thomas S. Waldo*
> Thomas S. Waldo (AK Bar No. 9007047)
> Olivia Glasscock (AK Bar No. 1809072)
> EARTHJUSTICE
>
> *Attorneys for Southeast Alaska Conservation*
> *Council; Alaska Rainforest Defenders;*
> *Center for Biological Diversity; Sierra Club;*
> *Defenders of Wildlife; Alaska Wilderness*
> *League; National Audubon Society; and*
> *Natural Resources Defense Council.*