PRERAK SHAH
Deputy Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

Erika Norman, CA Bar # 268425
Trial Attorney
Natural Resources Section
4 Constitution Square
150 M Street, NE, Suite 2.900
Washington, DC 20002
Phone: (202) 305-0475
Fax: (202) 305-0506
Erika.Norman@usdoj.gov

*Attorneys for all Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES FOREST SERVICE, *et al.*,<br><br>Defendants | Case No. 1:19-cv-00006-SLG |

**DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING REMEDY**

## TABLE OF CONTENTS

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Vacatur is an Equitable Remedy That Should be Narrowly Crafted to Remedy Plaintiffs' Injury Without Interfering with the Agency's Discretion on Remand. .......... 2

B. The Unchallenged Portions of the ROD Should Remain in Place. .......... 4

C. Vacatur of Any Portion of the POWLLA FEIS is Not Warranted .......... 6

III. CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Cases**

*Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*,
988 F.2d 146 (D.C. Cir. 1993) .......... 3

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 7

*Cal. Communities Against Toxics v. EPA*,
688 F.3d 989 (9th Cir. 2012) .......... 3, 11

*Califano v. Yamasaki*,
442 U.S. 682 (1979) .......... 3

*Croman Corp. v. United States*,
724 F.3d 1357 (Fed. Cir. 2013) .......... 8

*Ctr. for Biological Diversity v. BLM*, No. C 06-4884 Sl,
2011 WL 337364 (N.D. Cal. Jan. 29, 2011) .......... 5

*Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*,
538 F.3d 1172 (9th Cir. 2008) .......... 9

*Ctr. for Food Safety v. Vilsack*,
734 F. Supp. 2d 948 (N.D. Cal. 2010) .......... 4

*Del Norte Cty v. United States*,
732 F.2d 1462 (9th Cir. 1984) .......... 8

*Idaho Farm Bureau Fed'n v. Babbitt*,
58 F.3d 1392 (9th Cir. 1995) .......... 3

*Jones v. Gordon*,
792 F.2d 821 (9th Cir. 1986) .......... 9

*Lemon v. Kurtzman*,
411 U.S. 192 (1973) .......... 3

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010) .......... 4

*Nat'l Wildlife Fed'n v. Espy*,
45 F.3d 1337 (9th Cir. 1995) .......... 3

*Or. Nat. Desert Ass'n v. BLM*,
625 F.3d 1092 (9th Cir. 2010) .......... 7

*Pac. Rivers Council v. U.S. Forest Serv.*,
942 F. Supp. 2d 1014 (E.D. Cal. 2013) .................... 4

*Pit River Tribe v. U.S. Forest Serv.*,
615 F.3d 1069 (9th Cir. 2010) .................... 3

*Rattlesnake Coal. v. EPA*,
509 F.3d 1095 (9th Cir. 2007) .................... 7

*Sierra Club v. Penfold*,
857 F.2d 1307 (9th Cir. 1988) .................... 7

*Sierra Club v. U.S. Dep't of Energy*,
825 F. Supp. 2d 142 (D.D.C. 2011) .................... 7

*Sierra Club v. Van Antwerp*,
719 F. Supp. 2d 77 (D.D.C. 2010) .................... 4

*Sierra Forest Legacy v. Sherman*,
951 F. Supp. 2d 1100 (E.D. Cal. 2013) .................... 11

*Today's IV, Inc. v. Fed. Transit Admin.*,
Nos. 13-00378, 13-00396, 13-00453, 2014 WL 5313943 (C.D. Cal. Sept. 12, 2014).... 4

*W. Oil & Gas Ass'n v. EPA*,
633 F.2d 803 (9th Cir. 1980) .................... 3

**Statutes**

5 U.S.C. § 704 .................... 6

5 U.S.C. §§ 701-706 .................... 2, 6

**Regulations**

36 C.F.R. § 220.1 .................... 7

36 C.F.R. § 220.7(c) .................... 7

40 C.F.R § 1508.13 .................... 7

40 C.F.R. § 1505.2(a) .................... 7

40 C.F.R. §§ 1505.2, 1506.1 .................... 5

40 C.F.R. §§ 1508.28, 1502.20 .................... 8

## I. INTRODUCTION

On March 11, 2020, the Court issued a Decision and Order on the Forest Service's Prince of Wales Landscape Level Analysis Project (the "POWLLA Project"), granting summary judgment to Plaintiffs on their National Environmental Policy Act ("NEPA"), Alaska National Interest Lands Conservation Act ("ANILCA"), and National Forest Management Act ("NFMA") claims. *See* ECF No. 40. The Court directed the parties to submit supplemental briefing on the appropriate remedy. *See id.* at 48-49. Defendants respectfully submit that relief in this case should be limited to Plaintiffs' request for partial vacatur of the Record of Decision's ("ROD's") authorization of commercial vegetation management and associated road construction activities, leaving in place the remaining portions of the ROD authorizing restoration, watershed improvement, and recreation activities. Plaintiffs have never asked that the Court prevent the latter activities from going forward, and they are not associated with the harms Plaintiffs alleged in their Complaint.

Further, any judicial intervention beyond partial vacatur of the ROD, such as vacatur of any portion of the Final Environmental Impact Statement ("FEIS") is inappropriate and unnecessary. Plaintiffs have not previously sought vacatur of the FEIS and vacatur of the FEIS is unnecessary to fully redress Plaintiffs' injuries.[1] Defendants ask that the Court remand the matter to the Forest Service for further consideration

[1] In their Complaint, Plaintiffs requested declaratory and injunctive relief and vacatur of the ROD. Compl. 19, ECF No. 1. They did not request vacatur of the FEIS.

consistent with the Court's Decision and Order, and allow the Forest Service to continue implementing the restoration and recreation components of the Project.

## II. ARGUMENT

Upon concluding that an agency action is arbitrary or capricious under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, a court has broad discretion to craft the appropriate remedy. That discretion should be aimed toward tailoring a remedy that is no more burdensome to the Defendant than necessary to remedy Plaintiffs' injuries, and be tempered by separation of powers principles that counsel against unduly restricting an agency's discretion as to how it should comply with the law in the future. In this case, the proper means of remedying Plaintiffs' injury without unnecessarily impinging on the Forest Service's discretion to determine its future method of compliance with the law is a judgment that leaves in place portions of the ROD that were not challenged by the Plaintiffs, and remands the matter to the Forest Service for further decision-making consistent with the Court's Decision and Order on summary judgment.

### A. Vacatur is an Equitable Remedy That Should be Narrowly Crafted to Remedy Plaintiffs' Injury Without Interfering with the Agency's Discretion on Remand.

Vacatur is a species of equitable relief, and courts are not obligated to vacate or "set aside" flawed agency decisions. As the Ninth Circuit explained in *Nat'l Wildlife Fed'n v. Espy*, "[a]lthough the district court has power to do so, it is not required to set aside every unlawful agency action. The court's decision to grant or deny injunctive or declaratory relief under [the] APA is controlled by principles of equity."

45 F.3d 1337, 1343 (9th Cir. 1995) (emphasis added); *see Cal. Communities Against Toxics v. EPA*, 688 F.3d 989, 992 (9th Cir. 2012) ("Whether agency action should be vacated depends on how serious the agency's errors are 'and the disruptive consequences of an interim change that may itself be changed.'") (quoting *Allied-Signal, Inc. v. U.S. Nuclear Regulatory Comm'n*, 988 F.2d 146, 150-51 (D.C. Cir. 1993)); *Pit River Tribe v. U.S. Forest Serv*., 615 F.3d 1069, 1080-81 (9th Cir. 2010) ("Our courts have long held that relief for a NEPA violation is subject to equity principles."); *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995) ("[W]hen equity demands, the regulation can be left in place while the agency follows the necessary procedures.").

In determining whether, and to what extent, vacatur is appropriate, courts consider both how serious the agency's errors are and the disruptive consequences of vacatur. *See Cal. Communities Against Toxics*, 688 F.3d at 992. Where vacatur is warranted, it must be narrowly tailored—like any equitable remedy—to "be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *see Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973) ("[E]quitable remedies are a special blend of what is necessary, what is fair, and what is workable.").

In applying these principles, courts in APA cases have often opted to leave invalid agency actions in place during remand. *See, e.g.*, *W. Oil & Gas Ass'n v. EPA*, 633 F.2d 803, 813 (9th Cir. 1980) ("[G]uided by authorities that recognize that a reviewing court has discretion to shape an equitable remedy, we leave the challenged designations in effect."); *Idaho Farm Bureau Fed'n*, 58 F.3d at 1405 (leaving Fish and Wildlife decision

in place despite "significant procedural error"); *Pac. Rivers Council v. U.S. Forest Serv.*, 942 F. Supp. 2d 1014 (E.D. Cal. 2013) (holding NEPA error did not warrant vacatur of challenged decision). A court has broad equitable powers to craft an appropriate remedy, including to partially vacate agency decisions where vacatur of the entire agency decision is unnecessary. *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010) (listing partial vacatur as an appropriate remedy in NEPA cases); *Ctr. for Food Safety v. Vilsack*, 734 F. Supp. 2d 948, 955 (N.D. Cal. 2010) (vacating agency decision in part); *Sierra Club v. Van Antwerp*, 719 F. Supp. 2d 77, 79-80 (D.D.C. 2010) (same); *Today's IV, Inc. v. Fed. Transit Admin.*, Nos. 13-00378, 13-00396, 13-00453, 2014 WL 5313943 (C.D. Cal. Sept. 12, 2014), *aff'd sub nom. Japanese Vill., LLC v. Fed. Transit Admin.*, 843 F.3d 445 (9th Cir. 2016) (same).

In this case, as explained further below, principles of equity and separation of powers counsel in favor of partial vacatur of the ROD as it pertains to commercial vegetation management and associated road construction activities and weigh against vacating anything else.

**B. The Unchallenged Portions of the ROD Should Remain in Place**.

Vacating the commercial vegetation management and road construction components of the ROD would fully remedy Plaintiffs' injuries in this case. Plaintiffs successfully challenged the Forest Service's compliance with NEPA, ANILCA, and NFMA in authorizing the vegetation management and road construction components of the Project. *See* Dkt. No. 22-1 at 43-44. By vacating the portions of the ROD challenged by Plaintiffs, the Court would prevent the Forest Service from proceeding with the

specific activities that Plaintiffs allege will cause them harm unless and until the agency issues a new decision to authorize those activities on remand in accordance with the Court's Decision and Order. *See, e.g.*, Pls.' Opening Br. 13, 35-39, ECF No. 10; *see* 40 C.F.R. §§ 1505.2, 1506.1 (prohibiting agencies from carrying out proposed major federal actions not authorized by a ROD).

A partial vacatur would allow those portions of the Project authorizing restoration, watershed improvement, and recreation activities to proceed without the need for additional agency action, an outcome favored by both parties. *See Ctr. for Biological Diversity v. BLM*, No. C 06-4884 Sl, 2011 WL 337364, at *2-3 (N.D. Cal. Jan. 29, 2011) (partially vacating ROD where the parties agreed most elements of the challenged decision should be retained).[2] Indeed, Plaintiffs even go so far as to aver that "in the absence of timber sales and roads [watershed improvement, restoration, or sustainable recreation management] activities generally do not have significant impacts on the environment and therefore do not generally require an EIS." Pls.' Opening Br. 35. Portions of the POWLLA ROD authorizing restoration, watershed improvement, and recreation activities should not be subject to vacatur.

---

[2] The watershed improvement, restoration, and recreation activities to be preserved would include, but are not limited to, the following activities that are already in progress on the Forest: (i) three aquatic organism passage sites awarded to Ketchikan Ready Mix; (ii) five additional aquatic organism passage sites in agreements with the Klawock Cooperative Association and the Hydaburg Cooperative Association; (iii) the Nahania Stream Habitat Restoration Project in partnership project with the Nature Conservancy; and (iv) the Canoe Point trail reconstruction partnership project with the National Forest Foundation.

### C. Vacatur of Any Portion of the POWLLA FEIS is Not Warranted

Before filing this brief, counsel for Defendants reached out to counsel for Plaintiffs regarding Plaintiffs' position on the appropriate remedy in this case. Based on those communications, Defendants anticipate that Plaintiffs may ask the Court to vacate portions of the FEIS relating to the challenged vegetation management and road construction activities, in addition to vacating portions of the ROD related to those activities. Vacatur of the FEIS is not warranted.

Plaintiffs have never before requested vacatur of the FEIS.[3] Because the FEIS is not a decision document and does not authorize the agency to take any action, vacatur of the FEIS is not needed to remedy Plaintiffs' injuries. Moreover, vacatur of the FEIS would inappropriately disrupt the Forest Service's discretion to proceed in a manner consistent with the Court's Decision and Order on remand, and would almost certainly delay future timber sale activities, harming the Forest Service as well as local communities and businesses.

Because the POWLLA ROD – not the FEIS – is the final agency action subject to judicial review here, the judicial remedy should be directed at the ROD. An EIS standing alone is not a final agency action subject to judicial review. Under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, judicial review is limited to "final agency action." 5 U.S.C. § 704. "An agency action is 'final' [only] when (1) the agency reaches the 'consummation' of its decisionmaking process and (2) the action determines the

---

[3] Neither the Complaint (ECF No. 1) nor Plaintiffs' summary judgment brief (ECF No. 10, 19) mention vacating the FEIS.

'rights and obligations' of the parties or is one from which 'legal consequences will flow.'" *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103 (9th Cir. 2007) (quoting *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997)). In the context of NEPA, the consummation of the agency's decision-making process—and thus the final agency action subject to review under the APA—is issuance of a ROD selecting one of the courses of action analyzed in the EIS.[4] *See*, *e.g.*, *Or. Nat. Desert Ass'n v. BLM*, 625 F.3d 1092, 1118 (9th Cir. 2010) ("Once an EIS's analysis has been solidified in a ROD, an agency has taken final agency action."); 40 C.F.R. § 1505.2(a) (The ROD "[s]tates what the decision was."). The EIS itself does not authorize any particular action and is not subject to judicial review until a ROD has been issued. *Sierra Club v. U.S. Dep't of Energy*, 825 F. Supp. 2d 142, 156-57 (D.D.C. 2011) (dismissing challenge to an EIS alone as premature).

Vacatur of any portion of the POWLLA FEIS is also unnecessary, because Plaintiffs' injuries are fully redressed by partial vacatur of the ROD, which would preclude any commercial vegetation management (i.e., timber harvest) and road construction in the Project area until further NEPA analysis is conducted consistent with this Court's Decision and Order and a new decision is issued. The Forest Service is entitled to the presumption that it will comply with the law on remand with respect to future NEPA analysis and decisions. *See, e.g.*, *Sierra Club v. Penfold*, 857 F.2d 1307, 1319 (9th Cir. 1988) (noting that courts cannot assume that because NEPA compliance

[4] In cases where the agency has prepared an Environmental Assessment, the final agency action is a "Decision Notice" and "Finding of No Significant Impact" instead of a ROD. *See* 36 C.F.R. § 220.1, 36 C.F.R. § 220.7(c), 40 C.F.R § 1508.13.

was deficient in the past, the agency will not comply with NEPA in the future); *see Croman Corp. v. United States*, 724 F.3d 1357, 1364 (Fed. Cir. 2013) ("The presumption that government officials act in good faith is enshrined in our jurisprudence.") (citation omitted); *Del Norte Cty v. United States*, 732 F.2d 1462, 1468 (9th Cir. 1984) ("In the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties.").

Vacatur of the FEIS would also inappropriately disrupt the Forest Service's discretion on remand to proceed in a manner consistent with the Court's Decision and Order. There are a number of ways the Forest Service could offer timber sales on Prince of Wales Island in the future consistent with the Court's Decision and Order. For example, the Forest Service could treat the POWLLA FEIS as a programmatic EIS and then prepare site-specific EISs – or environmental assessments ("EAs") if appropriate – for future projects that would address the site-specificity and unit card timing issues identified by the Court in its Decision and Order. "Tiering" to analysis the Forest Service had already undertaken when preparing the POWLLA FEIS is both "appropriate" in certain instances and "encouraged." *See* 40 C.F.R. §§ 1508.28, 1502.20. Such an approach is also consistent with this Court's Decision and Order, which did not find the FEIS to be invalid for all purposes, only that it could not support the decision to authorize site-specific timber sales and road construction without further NEPA review. *See* Order at 17-18. If the FEIS is vacated, however, the Court would be foreclosing a valid regulatory path to NEPA compliance by preventing the Forest Service from tiering to the

POWLLA FEIS for old-growth timber sales in the Project area even if that would otherwise be a legally permissible approach.[5]

The decision of whether to start NEPA analysis from scratch, or to address the deficiencies identified by the Court through additional NEPA analysis tiering to the Project FEIS, is one that the Forest Service should have the discretion to make for itself in the first instance. Because it is impossible to ascertain at this stage whether some yet-to-be-determined hypothetical future use of the FEIS as part of a new decision would violate NEPA, the Court can and should leave the FEIS intact in its entirety. Doing so honors the principle that the agency and not the Court should determine the type of NEPA procedures needed on remand. *See, e.g.*, *Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1178–80 (9th Cir. 2008) (finding that the court should defer to the Agency's decision on remand whether to prepare an EA or full EIS); *Jones v. Gordon*, 792 F.2d 821, 829 (9th Cir. 1986) ("We emphasize, however, that we disagree with the district court's conclusion that the Service must prepare [an EIS] . . . . Rather, the Service must consider the requirements of NEPA and regulations thereunder, and must provide a reasoned explanation of whatever course it elects to pursue.").

Vacatur of the FEIS would also almost certainly have the effect of further delaying future timber sales on Prince of Wales Island by months or even years, unnecessarily

[5] With respect to the unit card requirement in TIM.3.1.C., the Forest Service also has a number of options for addressing that requirement on remand, including preparing an amendment to Forest Plan or publishing draft unit cards with its new NEPA analysis. Neither of these options would require the Court to vacate the POWLLA FEIS.

burdening the Forest Service with the need to repeat from scratch the broad public engagement and information-gathering process that previously took two years during the development of the POWLLA FEIS. Decl. of Earl Stewart ("Stewart Decl.") ¶ 3.[6] By contrast, if the Forest Service is able to rely on the POWLLA FEIS as a starting point for future site-specific NEPA analysis, the agency would be able to build on that programmatic document and issue a decision that addresses the legal errors found in the Court's Decision and Order approximately twelve months sooner. *Id.* ¶¶ 4-5. This time savings will allow the Forest Service to more quickly offer much-needed timber to local industry, consistent with its statutory obligations and Forest Plan objectives. *See id.* ¶ 5; Defs.' Principal Br. in Opp. to Summ. J. 5-6, ECF No. 12.

Delay would also harm local communities and individuals and businesses that rely on the Southeast Alaska timber industry. Since briefing on the preliminary injunction in this case, economic circumstances for the Southeast Alaska timber industry have not improved and local operators continue to struggle to keep their doors open. Decl. of Brian Brown ("Brown Decl.") ¶¶ 4-5, 8, ECF No. 45-2; Decl. of Kirk Dahlstrom ("Dahlstrom Decl.") ¶¶ 13-14, ECF No. 45-1.[7] Contrary to Plaintiffs' assertions throughout this litigation, non-Forest Service timber sales have largely failed to

---

[6] The Stewart Declaration is attached to this supplemental brief as Exhibit A.

[7] Defendants rely on the declarations submitted by Alaska Forest Association (*see* ECF No. 45) for the purpose of showing that a delay in the Forest Service's ability to offer diverse timber sales from the Tongass would be detrimental to the Southeast Alaska timber industry and local communities, consistent with the agency's findings in the administrative record. Such reliance should not, however, be construed as an acceptance that all of the facts asserted therein are true or that the Declarants' opinions and characterizations of events are entirely accurate or match those of the federal agency.

materialize and thus cannot be relied upon to supply the Southeast Alaska timber industry. Dahlstrom Decl. ¶ 17. As the Forest Service determined in the record, the timber industry contributes to the economic viability of Prince of Wales Island area communities. Defs.' Principal Br. in Opp. in Summ. J. 31, 40-41. Viking employs forty people at its Craig, Alaska mill and supports dozens of contractors. Dahlstrom Decl. ¶ 13. The wood residuals from Viking's mill are used to heat Craig's schools and aquatic center, saving the small town tens of thousands of dollars annually. *Id.* ¶ 14. Finally, during the continuing global pandemic, the Southeast Alaska timber industry has continued to safely operate, in contrast to other industries dependent on tourism. Brown Decl. ¶ 12; *see also* Dahlstrom Decl. ¶ 11 (testifying that residual wood chips from Viking's mill are being turned into medical-grade pulp used to make personal protective equipment). The jobs provided by Alcan, Viking, and others are even more badly needed now given current economic conditions.

The Ninth Circuit in *California Communities Against Toxics* made clear that courts should consider economic and other practical concerns such as these in deciding whether vacatur is appropriate. *See* 688 F.3d at 994 ("If saving a snail warrants judicial restraint, so does saving the power supply."); *Sierra Forest Legacy v. Sherman*, 951 F. Supp. 2d 1100, 1106 (E.D. Cal. 2013) ("the determination of when to remand without vacatur should not be limited to situations where it is necessary to avoid environmental harm, but should instead be based on a broader examination of the equities"). Here, the fact that vacating the FEIS is likely to harm the Forest Service, the already struggling Southeast Alaska timber industry, as well as local communities reliant on that industry,

by further delaying future timber sales, should weigh heavily against an unnecessary vacatur of the Project FEIS.

To the extent Plaintiffs favor vacatur of the FEIS out of a desire to further influence or preemptively challenge future decisions that may rely on that document, those concerns are unfounded in light of the Court's Decision and Order and the parties' agreement regarding partial vacatur of the ROD. Plaintiffs will have opportunities to comment on any approach the Forest Service chooses to take on remand to remedy the legal flaws the Court identified. Moreover, while they may ultimately oppose the Forest Service's chosen approach, unless and until a new decision authorizing timber harvest and/or road construction on Prince of Wales Island is issued Plaintiffs' speculation about what the Forest Service may do on remand does not constitute a present injury. To the extent that the Forest Service undertakes NEPA, ANILCA, and NFMA procedures on remand with which Plaintiffs disagree, Plaintiffs' proper recourse is to comment on and challenge those procedures when, and if, a new final agency decision is issued.

In sum, vacatur of any portion of the EIS is not warranted, because it is not needed to remedy Plaintiffs' injuries – with or without the EIS, the Forest Service cannot proceed with the challenged aspects of the POWLLA Project unless and until it undertakes further analysis consistent with the Court's Decision and Order. It also improperly involves this Court in the determination of the form of the NEPA procedures the Forest Service must follow on remand by foreclosing the option of tiering to the POWLLA FEIS in a future NEPA document. Moreover, vacatur of the FEIS would very likely result in an unnecessary further delay of future timber sales.

## III. CONCLUSION

For the reasons set forth above, Defendants respectfully submit that the proper balance between the need to remedy Plaintiffs' injuries and the need to avoid judicial intervention in the Agency's proceedings on remand is struck by leaving in place unchallenged portions of the ROD, and remanding the matter to the Forest Service for further proceedings consistent with the Court's March 11 Decision and Order.

Dated: May 5, 2020

PRERAK SHAH
Deputy Assistant Attorney General
U.S. Department of Justice

*/s/ Erika Norman*____________
ERIKA NORMAN
Trial Attorney
Natural Resources Section
4 Constitution Square
150 M Street, NE, Suite 2.900
Washington, DC 20002
Phone: (202) 305-0475
Fax: (202) 305-0506
erika.norman@usdoj.gov

*Counsel for Defendants*