Thomas S. Waldo
Olivia Glasscock
EARTHJUSTICE
325 Fourth Street
Juneau, AK 99801
T: 907.586.2751
E: twaldo@earthjustice.org
E: oglasscock@earthjustice.org

*Attorneys for Plaintiffs Southeast Alaska Conservation Council; Alaska Rainforest Defenders; Center for Biological Diversity; Sierra Club; Defenders of Wildlife; Alaska Wilderness League; National Audubon Society; and Natural Resources Defense Council.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL; ALASKA RAINFOREST DEFENDERS; CENTER FOR BIOLOGICAL DIVERSITY; SIERRA CLUB; DEFENDERS OF WILDLIFE; ALASKA WILDERNESS LEAGUE; NATIONAL AUDUBON SOCIETY; and NATURAL RESOURCES DEFENSE COUNCIL,<br><br>*Plaintiffs*,<br><br>v.<br><br>UNITED STATES FOREST SERVICE; UNITED STATES DEPARTMENT OF AGRICULTURE; DAVID SCHMID, in his official capacity as United States Forest Service Region 10 Regional Forester; and EARL STEWART, in his official capacity as Forest Supervisor for the Tongass National Forest,<br><br>*Defendants*. | Case No. 1:19-cv-00006-SLG |

**PLAINTIFFS' RESPONSE TO
DEFENDANTS' SUPPLEMENTAL BRIEF ADDRESSING REMEDY**

## TABLE OF CONTENTS

I. Plaintiffs may request relief regarding the FEIS. ...................................................... 1

II. There are no circumstances in which it would be permissible to tier to the FEIS as a programmatic plan. ................................................................................. 3

III. Limited vacatur of the FEIS would cause no disruption so significant as to warrant a plain violation of NEPA. ........................................................................... 6

IV. In the alternative, Plaintiffs request declaratory relief holding tiering impermissible. ............................................................................................................. 8

CONCLUSION ..................................................................................................................... 8

# TABLE OF AUTHORITIES

## CASES

*Humane Society of U.S. v. Locke*,
    626 F.3d 1040 (9th Cir. 2010) .................................................................................. 6

*'Ilio'ulaokalani Coalition v. Rumsfeld*,
    464 F.3d 1083 (9th Cir. 2006) .................................................................................. 3

*League of Wilderness Defenders./Blue Mountains. Biodiversity Project v. Peña*,
    No. 3:12-cv-02271-HZ, 2015 WL 1567444 (D. Or. April 6, 2015) ......................... 2, 8

*National Trust for Historic Preservation v. Suazo*,
    No. CV-13-01973-PHX-DGC, 2015 WL 1432632 (D. Ariz. Mar. 27, 2015) .............. 2

*Natural Resources Defense Council v. Wheeler*,
    955 F.3d 68 (D.C. Cir. 2020) ..................................................................................... 2

*Pollinator Stewardship Council v. U.S. Environmental Protection Agency*,
    806 F.3d 520 (9th Cir. 2015) ..................................................................................... 6

## REGULATIONS

40 C.F.R. § 1502.20 ........................................................................................................ 3

## FEDERAL REGISTER NOTICES

85 Fed. Reg. 20,984 (Apr. 15, 2020) .............................................................................. 7

Pursuant to this Court's orders, Plaintiffs submit this response to Defendants' Supplemental Brief Addressing Remedy. Doc. 46; *see* Doc. 40 at 50; Doc. 44.

By stating its intent to "tier" to the Prince of Wales Final Environmental Impact Statement (FEIS) as a "programmatic document" in future site-specific timber sale decisions, Doc. 46 at 12-14, the Forest Service seeks to do something that would violate the National Environmental Policy Act (NEPA). To do so would prejudice Plaintiffs and other members of the public by establishing a de facto 15-year programmatic plan for Prince of Wales Island without: disclosing the intent to do so; undertaking the analysis to support such a plan; issuing a Record of Decision (ROD) adopting such a plan; or conducting any of the public participation required by law for such a process. Further, the agency creates a false choice between this approach and starting from scratch. *Id.* at 13. As explained in Plaintiffs' brief, if the Forest Service believes the FEIS contains NEPA-compliant analysis that would support future site-specific decisions, the agency may incorporate those parts of the FEIS in future site-specific timber sale EISs, subject to full NEPA scrutiny. *See* Doc. 47 at 9. The agency would not have to start from scratch. For these reasons, Plaintiffs request that the Court vacate the FEIS as applied to vegetation management and road construction, effectively preventing the Forest Service from unlawfully tiering to it while still allowing the agency to make lawful use of it.

## I. Plaintiffs may request relief regarding the FEIS.

Notwithstanding the Forest Service's objection, the Court may order relief needed to fully redress Plaintiffs' injuries even though Plaintiffs did not specify that relief in their

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*, 1
Case No. 1:19-cv-00006-SLG

complaint or opening brief.  *See* Doc. 46 at 10.  Only in communications between counsel for the parties after this Court's ruling on the merits did Plaintiffs learn the Forest Service was proposing to repurpose the FEIS as a programmatic plan.  *See id.*  Before then, Plaintiffs reasonably assumed that a declaratory judgment holding the FEIS invalid and vacating the offending portions of the ROD would be sufficient to prevent any unlawful future use of the FEIS.  They had no reason to anticipate that the Forest Service would propose to use the FEIS in a manner directly contrary to its stated purpose, an approach apparently without precedent.  But it is precisely because of such unanticipated contingencies that Plaintiffs included the customary plea in their complaint for the Court to "[g]rant such other relief as this Court deems just and proper."  Doc. 1 at 21.  The request is appropriate in these circumstances.

Normally, Plaintiffs would agree with the Forest Service that a declaratory judgment on the adequacy of an EIS and vacatur of the ROD would be sufficient to grant needed relief in this case.  *See* Doc. 46 at 10-12.  Nevertheless, courts do vacate EISs or portions thereof when appropriate.  *See*, *e.g.*, *League of Wilderness Defs./Blue Mts. Biodiversity Project v. Peña*, No. 3:12-cv-02271-HZ, 2015 WL 1567444 at *3-7, *9 (D. Or. April 6, 2015); *Nat'l Tr. for Historic Pres. v. Suazo*, No. CV-13-01973-PHX-DGC, 2015 WL 1432632 at *14 (D. Ariz. Mar. 27, 2015).  Plaintiffs do not seek to vacate any particular "portion" of the FEIS, Doc. 46 at 11, which would be difficult to segregate in this case.  Rather, they seek to vacate only the application of the FEIS to vegetation management and road construction.  *See Nat. Res. Def. Council v. Wheeler*, 955 F.3d 68,

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,  2
Case No. 1:19-cv-00006-SLG

81-82 (D.C. Cir. 2020) (holding that courts may vacate only unlawful applications). Plaintiffs have requested appropriate, narrow relief targeted at the specific violations proved, taking into account the Forest Service's stated intent for use of the FEIS.

## II. There are no circumstances in which it would be permissible to tier to the FEIS as a programmatic plan.

In their supplemental brief on remedy, Plaintiffs pointed out that the FEIS repeatedly states that its purpose is to be the final NEPA analysis for all of the actions it encompasses. Doc. 47 at 10-12. It would therefore be unlawful, and prejudicial to Plaintiffs and the public, to use it now as a programmatic plan and tier to it without first going through the public participation, disclosure, analysis, and decision process to support this repurposing. *See id.*

A fatal flaw in the Forest Service's proposal is the lack of any ROD adopting a programmatic plan to which to tier. *See id.* at 11. A key purpose of tiering is "to focus on the actual issues ripe for decision at each level of environmental review." *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1094 (9th Cir. 2006) (quoting 40 C.F.R. § 1502.20). In a site-specific project decision that tiers to a programmatic plan, the agency does not revisit decisions made at the higher level. *Id.* at 1096 ("the [programmatic EIS] constrains future decision-making"). For example, the FEIS in this case states explicitly that it is a "project-level analysis" that tiers to the programmatic Tongass forest plan, noting that the FEIS "does not attempt to address decisions made at higher levels." Doc. 25-6 at 23-24.

In a future site-specific timber sale here, there would be no higher-level decision for Prince of Wales Island. The Forest Service apparently proposes to tier directly to the FEIS, with no new, programmatic ROD. Doc. 46 at 12; Doc. 46-1 at 3. If the Court vacates those parts of the existing ROD approving vegetation management and road construction, as the parties now agree is appropriate, there will be no decision as to those activities. The Forest Service's brief acknowledges that the ROD provides the necessary decision and final agency action. Doc. 46 at 10-11. Without such a decision, the FEIS will simply be an analysis of various alternatives for logging and road construction, providing no higher-level decision to which future projects might tier.

This gap in the process would be enormously consequential. The alternatives examined in the FEIS would allow from zero to over 23,000 acres of old-growth logging, with alternatives of 6,000 acres and 13,000 acres between the extremes. Doc. 25-6 at 36. They would allow from zero to 229 miles of new road construction. *Id.* One of the action alternatives would follow all of the recommendations of the Interagency Wolf Habitat Management Program, another would follow some of them, and another would follow none. *Id.* at 105-06, 167-68. These choices affect logging and road construction, and their impacts, for the next 15 years over a project area of 1.8 million acres. *See* Doc. 40 at 4-5. The Forest Service does not explain how it would be possible to tier to the FEIS with no valid ROD making these critical choices.

Nor would adopting a programmatic ROD based on the FEIS be a viable option. As pointed out in Plaintiffs' remedy brief, such a ROD would be contrary to the purposes

stated in the FEIS and would therefore require a supplemental EIS.  *See* Doc. 47 at 11.  While the ROD here was structured much like that of a programmatic plan, *see* Doc. 19 at 9-10, it was never presented as such, and the FEIS did not analyze it as such.

In the absence of a programmatic decision on the alternatives addressed in the FEIS, all that is left of the FEIS is analysis.  As explained in Plaintiffs' brief, there are lawful ways to make use of this analysis.  If the Forest Service believes the FEIS contains analysis that is valid and applicable to project decisions, the agency may incorporate that analysis by reference in those future EISs, where the analysis would remain subject to full NEPA scrutiny.  Doc. 47 at 9.  The problem with tiering, by contrast, is that it assumes a higher level decision has already been made with full and adequate NEPA review, an assumption that would be false in this case and would hide pivotal decisions from analysis, public participation, and judicial review.  Vacating application of the FEIS to vegetation management and road construction would effectively prevent the agency from unlawfully tiering to it while allowing lawful incorporation by reference.

The question whether the FEIS contains useful analysis for incorporation by reference is one for another day.  The Forest Service notes that the Court held the FEIS invalid only to support site-specific timber sales without further NEPA review.  *See* Doc. 46 at 12.  This is true, because that was the only purpose for which the FEIS was written.  Plaintiffs believe the FEIS is flawed in many other respects, but the Court need not decide that here.  It is enough to note that the FEIS did not produce a programmatic

ROD, was not prepared for that purpose, and therefore is not something to which the agency can lawfully tier.

### III. Limited vacatur of the FEIS would cause no disruption so significant as to warrant a plain violation of NEPA.

Given the failures of the FEIS identified by this Court, the Court should only decline to vacate relevant applications of the FEIS in "limited" and "rare" circumstances. *Pollinator Stewardship Council v. U.S. EPA*, 806 F.3d 520, 532 (9th Cir. 2015); *Humane Soc'y of U.S. v. Locke*, 626 F.3d 1040, 1053 n.7 (9th Cir. 2010); Doc. 40 at 47-48. None of the disruption claimed by the Forest Service clears that bar.

The Forest Service's concern about disruption to the timber industry is based entirely on a false choice between tiering and starting from scratch. Doc. 46 at 13; Doc. 46-1 at 3 ¶3. The agency relies on claims of harm asserted in timber industry declarations, but those declarations are based on the same false choice. *See* Doc. 45-1 at 3 ¶6; Doc. 45-2 at 6-7 ¶13. There is another option: incorporation by reference. If, as asserted in its remedy brief, the agency believes the FEIS contains analysis useful to future project decisions, the agency may incorporate that analysis by reference in future site-specific EISs. This is similar to tiering, but without the presumption that some NEPA-compliant higher-level decision has already been made, and with the requirement that any incorporated material must itself withstand NEPA scrutiny. *See* Doc. 47 at 9. This would likely save time compared to starting from scratch.

Regardless, the harms claimed by the timber industry and cited by the Forest Service are not consistent with the evidence. Dahlstrom complains that the timber expected from state and Mental Health Trust did not materialize. Doc. 45-1 at 8 ¶17. But the giant Mental Health sale is merely "a little behind schedule" and "[w]ill help maintain a steady timber flow." Ex. 2 at 10 (Board of Forestry minutes at 10); *see also* Doc. 26 at 7 (describing sale). This alternative timber will therefore likely be available before any new Tongass sales, even with tiering. Dahlstrom also states that the wood chips from his mill are used for surgical masks and toilet paper. Doc. 45-1 at 5 ¶11. He does not claim, nor is there any reason to believe, that there is any shortage of raw material for these products, particularly with a surplus of wood on the market, or that tiering would prevent any such shortage. *See* 85 Fed. Reg. 20,984, 20,987 (Apr. 15, 2020) (USDA decision extending timber sale contracts, describing "[l]arge inventories of logs," and noting that "[m]arket demand and tariff conditions are delaying the start of all operation in" Alaska). Brown foresees a brief window in which Alaska producers may have a market opportunity for young growth, if they could overcome travel restrictions. Doc. 45-2 at 4 ¶7. Allowing tiering for the old growth sales planned in the Prince of Wales project would do nothing to help with that problem.

Even if the Court were to conclude there is some potential harm to Defendants if they must incorporate by reference rather than tier, any such harm would be limited and would not justify short-cutting the requirements of NEPA. The resulting harm to old-growth forests, to Plaintiffs' interests, to subsistence uses, and to other sectors of the

*Southeast Alaska Conservation Council et al. v. U.S. Forest Service et al.*,  7
Case No. 1:19-cv-00006-SLG

economy such as fishing and tourism would be irreparable and effectively permanent. *See* Doc. 27 at 10-11. This harm justifies vacatur of the FEIS as applied to vegetation management and road construction even in the face of some potential impacts on timber supply. *See League of Wilderness Defs./Blue Mts. Biodiversity Project*, 2015 WL 1567444 at *6 ("the disruption to the agency's plans that will result from vacatur of the FEIS is outweighed by the benefit of ensuring that a legal and adequate FEIS and ROD are in place before an irreversible logging project begins").

## IV. In the alternative, Plaintiffs request declaratory relief holding tiering impermissible.

Should the Court find that vacating unlawful application of the FEIS would not be an appropriate remedy, Plaintiffs request that the Court enter a declaratory judgment that the FEIS was not prepared for the purpose of adopting a programmatic plan and does not do so, and that it is therefore not something to which the Forest Service may lawfully tier.

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court: (1) vacate the portions of the ROD authorizing vegetation management and road construction; and (2) vacate the FEIS as applied to vegetation management and road construction.

Respectfully submitted this 19th day of May, 2020.

*s/ Thomas S. Waldo*
Thomas S. Waldo (AK Bar No. 9007047)
Olivia Glasscock (AK Bar No. 1809072)
EARTHJUSTICE

*Attorneys for Southeast Alaska Conservation Council; Alaska Rainforest Defenders; Center for Biological Diversity; Sierra Club; Defenders of Wildlife; Alaska Wilderness League; National Audubon Society; and Natural Resources Defense Council.*