# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTHEAST ALASKA CONSERVATION COUNCIL, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES FOREST SERVICE, *et al.*, <br><br> Defendants. | Case No. 1:19-cv-00006-SLG |

## ORDER ON REMEDY

On March 11, 2020, the Court entered its Decision and Order holding that the Environmental Impact Statement ("EIS") for the Prince of Wales Landscape Level Analysis Project ("Project"), which authorized "integrated resource management activities on Prince of Wales Island" over a period of 15 years,[1] violated the National Environmental Policy Act ("NEPA"), the Alaska National Interest Lands Conservation Act ("ANILCA"), and the National Forest Management Act ("NFMA"), and that it was therefore "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," pursuant to § 706(2)(A) of the Administrative Procedure Act ("APA").[2] The Court ordered declaratory relief to this effect but, at the Forest Service's request, allowed the parties to file supplemental

---

[1] AR 833_2167 at 001459 (Project EIS).

[2] *See generally* Docket 40.

briefing on the question of the appropriate remedy before entering a final judgment.[3] The parties have completed their briefing and the issue is now before the Court.[4]

## LEGAL STANDARD

Vacatur is the normal remedy under the APA, which directs reviewing courts to "set aside" unlawful agency action.[5] The Ninth Circuit has explained that a court should "order remand without vacatur only in 'limited circumstances,'" and "leave an invalid rule in place only 'when equity demands.'"[6] To determine whether to remand an action without vacatur, a court is to "weigh the seriousness of the agency's errors against 'the disruptive consequences of an interim change that

---

[3] Docket 40 at 50.

[4] The Forest Service's opening brief is at Docket 46 and its response is at Docket 49. Plaintiffs' opening brief is at Docket 47 and their response is at Docket 50. Amicus curiae Alaska Forest Association filed two declarations at Dockets 45-1 and 45-2.

[5] 5 U.S.C. § 706(2)(A); *see also Se. Alaska Conservation Council v. U.S. Army Corps of Eng'rs*, 486 F.3d 638, 654 (9th Cir. 2007) ("Under the APA, the normal remedy for an unlawful agency action is to set aside the action. In other words, a court should vacate the agency's action and remand to the agency to act in compliance with its statutory obligations." (internal quotation marks and citations omitted) *rev'd on other grounds sub nom. Coeur Alaska, Inc. v. Se. Alaska Conservation Council*, 557 U.S. 261 (2009)).

[6] *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015) (first quoting *Cal. Cmtys. Against Toxics v. U.S. Envtl. Prot. Agency*, 688 F.3d 989, 994 (9th Cir. 2012); then quoting *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405 (9th Cir. 1995)). Partial vacatur is also an acceptable form of relief under the APA. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165–66 (2010) ("If a less drastic remedy (such as partial or complete vacatur of APHIS's deregulation decision) was sufficient to redress respondents' injury, no recourse to the additional and extraordinary relief of an injunction was warranted.").

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 2 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 2 of 14

may itself be changed.'"[7] "Put differently, 'courts may decline to vacate agency decisions when vacatur would cause serious and irremediable harms that significantly outweigh the magnitude of the agency's error.'"[8] The Ninth Circuit "ha[s] long held that relief for a NEPA violation is subject to equity principles."[9]

## DISCUSSION

The parties now agree that the portions of the Project's Record of Decision ("ROD") that authorize vegetation management and road construction should be vacated.[10] However, the parties disagree as to whether the Project EIS should also be vacated as applied to these two activities.

Plaintiffs did not explicitly request a vacatur of the Project EIS in the Complaint or in their briefing on the merits. But they contend that this relief "flows necessarily from the Court's ruling on the merits" and is necessary to prevent the Forest Service from tiering to the Project EIS in future NEPA analyses.[11] The Forest Service maintains that the EIS should not be vacated for several reasons,

---

[7] *Pollinator Stewardship Council*, 806 F.3d at 532 (quoting *Cal. Cmtys. Against Toxics*, 688 F.3d at 992).

[8] *Aqualliance v. U.S. Bureau of Reclamation*, 312 F. Supp. 3d 878, 881 (E.D. Cal. 2018) (quoting *Klamath-Siskiyou Wildlands Ctr. v. Nat'l Oceanic & Atmospheric Admin.*, 109 F. Supp. 3d 1238, 1242 (N.D. Cal. 2015)).

[9] *Pit River Tribe v. U.S. Forest Serv.*, 615 F.3d 1069, 1080–81 (9th Cir. 2010).

[10] Docket 46 at 8–9; Docket 47 at 6–7.

[11] Docket 47 at 7.

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 3 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 3 of 14

among them that Plaintiffs had not previously asked for that form of relief,[12] that the ROD is the only "final agency action subject to review under the APA" in this case,[13] that "[v]acatur of the [Project EIS] would . . . inappropriately disrupt the Forest Service's discretion on remand,"[14] and that vacatur of the EIS would harm the local economy by delaying the Forest Service's ability to offer timber sales to the Southeast Alaska timber industry.[15] For the reasons set forth below, the Court concludes that vacatur of the Project EIS with respect to vegetation management and road construction is warranted in this case.[16]

The Court first addresses the Forest Service's contentions that "the judicial remedy should be directed at the ROD" alone because Plaintiffs had not previously requested vacatur of the EIS and because "[a]n EIS standing alone is not a final agency action subject to judicial review."[17] Although Plaintiffs explicitly requested partial vacatur of the ROD in the Complaint and in their briefing on the merits,[18] they also made the traditional request for "such other relief as this Court deems

---

[12] Docket 46 at 10.

[13] Docket 46 at 11.

[14] Docket 46 at 12.

[15] Docket 46 at 14–16; *see also generally* Docket 45-1; Docket 45-2.

[16] Plaintiffs alternatively request a declaratory judgment stating that the Forest Service may not tier to the Project EIS. Docket 50 at 11. The Court does not reach this request in light of its partial vacatur of the Project EIS.

[17] Docket 46 at 10.

[18] *See* Docket 1 at 20 (Complaint); Docket 22-1 at 43–44 (Plaintiffs' Merits Brief).

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 4 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 4 of 14

just and proper."[19] And the Court's Decision and Order found that both the Project EIS and the ROD violated federal law.[20] Further, the Forest Service's assertion that the Project EIS cannot itself be subject to review or vacatur is mistaken. The Forest Service cites *Oregon Natural Desert Association v. BLM* for the proposition that the ROD is the final agency action that triggers review under the APA.[21] But in that case, the Ninth Circuit cited a string of cases clarifying that once a ROD has issued, both it *and* the Final EIS are ripe for judicial review.[22] And Plaintiffs have cited to two cases in which the district court vacated the EIS along with the relevant ROD.[23] Accordingly, the Court concludes that partial vacatur of the Project EIS is an available remedy in this case.

---

[19] Docket 1 at 21.

[20] *See* Docket 40 at 50 ("The Project EIS violates NEPA, 42 U.S.C. § 4332(2)(C), ANILCA, 16 U.S.C. § 3120(a), and NFMA, 16 U.S.C. § 1604(i).").

[21] Docket 46 at 11 (citing 625 F.3d 1092, 1118 (9th Cir. 2010)).

[22] *Or. Nat. Desert Ass'n*, 625 F.3d at 1118–19 (collecting cases); see also *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Peña*, Case No. 3:12-cv-02271-HZ, 2015 WL 1567444, at *3 (D. Or. April 6, 2015) ("*Oregon Natural Desert Ass'n* and the cases it cites make clear that once a ROD has been issued, both the FEIS and the ROD are final agency actions subject to judicial review."). And unlike *Sierra Club v. U.S. Department of Energy*, the other case the Forest Service cites, a ROD authorizing the Project was issued in this case. *Cf.* 825 F. Supp. 2d 142, 156–57 (D.D.C. 2011) (holding that EIS was not ripe for review where ROD was yet to issue).

[23] Docket 50 at 5 (citing *Peña*, 2015 WL 1567444, at *3–7,*9; *Nat'l Tr. for Historic Pres. v. Suazo*, No. CV-13-01973-PHX-DGC, 2015 WL 1432632, at *14 (D. Ariz. Mar. 27, 2015)).

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 5 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 5 of 14

Whether partial vacatur of the Project EIS is an *appropriate* remedy in this case requires the Court to weigh the gravity of the errors committed by the agency against the disruption that vacatur would cause.[24]

### A. The Seriousness of the Errors

The Court discussed the EIS and its inadequacies at length in its decision on the merits and will not repeat that analysis in detail here.[25] In short, the Court concluded that the Project EIS was fundamentally invalid at a structural level; the Court held that the Forest Service erred in deferring site-specific decision-making when it determined that such future decision-making would not be subject to additional NEPA review.[26] In reaching its conclusion, the Court also explained that the analytical framework used in the EIS, which focused primarily on the Project's maximum potential impacts, and the assumptions made as a part of that analysis, resulted in an inadequate comparison of alternatives and was "not sufficient to meet the requirements for an EIS."[27]

These errors are serious. The Project EIS's lack of site-specificity and inadequate comparison of alternatives precluded the Forest Service from taking

---

[24] *See Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015).

[25] *See generally* Docket 40.

[26] Docket 40 at 32–33.

[27] Docket 40 at 25–31. The Court also concluded that the EIS violated ANILCA for similar reasons, Docket 40 at 33–40, and that it violated NFMA by failing to comply with the forest plan for the Tongass, Docket 40 at 40–47.

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 6 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 6 of 14

the requisite hard look at the Project's potential impacts and deprived the public of the opportunity to comment on those impacts, thus undermining the "two fundamental objectives" of NEPA: the agency's careful consideration of "detailed information concerning significant environmental impacts" and the public's ability to participate in the decision-making process.[28] These errors therefore strongly weigh in favor vacatur.[29]

The Forest Service now suggests that the Project EIS's shortcomings do not necessarily prevent it from serving as a programmatic EIS, to which future site-specific analyses could tier, potentially without further amendment.[30] The agency maintains that the Court's decision on the merits "did not find the [Project EIS] to be invalid for all purposes, only that it could not support the decision to authorize site-specific timber sales and road construction without further NEPA review."[31] The Forest Service reads the Court's Decision and Order too narrowly. In addition to the deferral of site-specific analysis, the Court also found the Project EIS's comparison of alternatives to be inadequate.[32] The failure to meaningfully compare alternatives is itself a significant error. As the Ninth Circuit has explained,

---

[28] *WildEarth Guardians v. Mont. Snowmobile Ass'n*, 790 F.3d 920, 924 (9th Cir. 2015) (quoting *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 349 (1989)).

[29] *Cf. Pollinator*, 806 F.3d at 532 (explaining that vacatur is appropriate if "fundamental flaws in the agency's decision make it unlikely that the same rule would be adopted on remand.").

[30] Docket 46 at 12–13; Docket 49 at 7–8.

[31] Docket 46 at 12 (citing Docket 40 at 17–18).

[32] Docket 40 at 25–31.

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 7 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 7 of 14

"the alternatives analysis section is the heart of the environmental impact statement."[33] The Court concluded that the Project EIS was invalid for its stated purpose—to act as a "large landscape-scale NEPA analysis that will result in a decision whether or not to authorize integrated resource management activities . . . over the next 15 years."[34] The errors identified by the Court's Decision and Order render the Project EIS invalid for that purpose regardless of the label the Forest Service attaches to it.[35] Further, to the extent that the Forest Service opposes vacatur of the Project EIS so that it may repurpose it into a programmatic EIS without taking additional NEPA-compliant steps to trigger judicial review of the document in its new capacity,[36] that approach would appear to be invalid under Ninth Circuit precedent.[37]

---

[33] *'Ilio'ulaokalani Coal. v. Rumsfeld*, 464 F.3d 1083, 1095 (9th Cir. 2006) (quoting *Friends of Se.'s Future v. Morrison*, 153 F.3d 1059, 1065 (9th Cir. 1998)).

[34] AR 833_2167 at 001459. The Forest Service also repeatedly stated that it designed the Project EIS such that no additional NEPA analysis would occur before ground-disturbing activities begin. *See, e.g.*, AR 833_2167 at 001443 (describing the Project EIS as producing "*one* decision to authorize integrated resource management actions on Prince of Wales Island." (emphasis added)); AR 833_2169 at 002078 (Appendix B to Project EIS stating that implementation plan was developed "to provide a linkage from the [Project EIS] to the project-specific work without the need for additional NEPA analysis"); *see also* Docket 40 at 17–18 (describing Forest Service's approach to NEPA analysis for the Project).

[35] *See California v. Block*, 690 F.2d 753, 761 (9th Cir. 1982) (explaining that courts must "focus upon a proposal's parameters as the agency defines them"); *see also* Docket 49 at 6 (contending that NEPA's implementing regulations "do not require a particular label designating an FEIS as "project" or "programmatic").

[36] *See* Docket 49 at 7–8.

[37] As the Forest Service notes, "the consummation of the agency's decision-making process . . . is issuance of a ROD." Docket 46 at 11; *see also* 40 C.F.R. § 1505.2 (requiring ROD); 36 C.F.R. § 220.5(g) (Forest Service regulations requiring ROD). Plaintiffs maintain that unless a new ROD were to be issued authorizing use of the Project EIS as a programmatic

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 8 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 8 of 14

The Forest Service maintains that vacatur of the ROD alone would fully redress Plaintiffs' injuries, and that Plaintiffs would have the opportunity to challenge any use of the Project EIS as a programmatic document once it is tiered to in a site-specific analysis.[38] But Plaintiffs have successfully identified structural errors in the Project EIS. A remedy that allows the Forest Service to build upon this inadequate foundation and compound those errors by tiering to the Project EIS would not grant Plaintiffs adequate relief.[39] The Court therefore concludes that the errors in the Project EIS in light of its stated purpose are of such seriousness as to

---

planning document, the NEPA process would be incomplete. *See* Docket 50 at 7. The Ninth Circuit has explained that "tiering to a document that has not itself been subject to NEPA review is not permitted." *See Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1073 (9th Cir. 2002); *see also All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1119–20 (9th Cir. 2018) (holding that tiering to analysis of draft EIS "would be improper because [it] did not undergo public comment and was therefore not subject to the full NEPA review," but that incorporation of data contained therein is permissible if incorporating document itself contains adequate analysis).

[38] *See, e.g.*, Docket 46 at 16 (asserting that "Plaintiffs will have opportunities to comment on any approach the Forest Service chooses to take on remand" and that they will suffer no injury "unless and until a new decision authorizing timber harvest and/or road construction on Prince of Wales Island is issued"). *But see Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1519 (9th Cir. 1992) ("[A] future challenge to a particular, site-specific action would lose much force once the overall plan has been approved—especially if the challenge were premised on the view that the overall plan grew out of erroneous assumptions."). Further, the Forest Service's contention that "a challenge to the [Project EIS] as a programmatic document" would not be ripe outside the "context of site-specific timber harvest and roadbuilding activities" is incorrect. *See* Docket 49 at 7. The Ninth Circuit has held that a programmatic EIS is ripe for review upon its finalization, prior to the authorization of a site-specific project. *See Laub v. U.S. Dep't of the Interior*, 342 F.3d 1080, 1087–91 (9th Cir. 2003).

[39] *See Laub*, 342 F.3d at 1089) (explaining that preferred alternative in programmatic EIS "will determine the scope of future site-specific proposals"). The Forest Service contends that "Plaintiffs should not be permitted to broaden their claims at this stage of the litigation" by challenging the use of the Project EIS as a programmatic document. Docket 49 at 7. But the Project EIS has never been held forth as a programmatic document; hence, Plaintiffs would have had no basis to challenge it as an invalid programmatic EIS.

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 9 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 9 of 14

weigh in favor of vacatur, and that vacatur of the ROD alone would not fully redress Plaintiffs' injuries.

### B. The Disruptive Consequences of Vacatur

The Forest Service argues that vacatur of the Project EIS with respect to vegetation management and road construction would be extremely disruptive because it would invade the agency's discretion on remand and require it to begin the NEPA process again from scratch.[40] The agency's chief complaint is that vacatur would leave it unable to tier to the Project EIS in future NEPA analyses, an outcome it characterizes as "precisely the kind of micromanagement of agency decision-making that courts should avoid."[41] For the reasons discussed above, however, the Court concludes that partial vacatur of the Project EIS is the natural consequence of the errors contained within it.[42] Moreover, vacatur leaves the Forest Service with considerable discretion about how to best design and authorize timber sales on Prince of Wales Island in the future.[43] And as Plaintiffs

---

[40] Docket 46 at 11–13.

[41] Docket 49 at 4.

[42] *See* 5 U.S.C. § 706(2)(A) (directing courts to "set aside" unlawful agency action); *see also League of Wilderness Defs./Blue Mountains Biodiversity Project v. Peña*, Case No. 3:12-cv-02271-HZ, 2015 WL 1567444, at *5 (D. Or. April 6, 2015) ("[T]he Court finds that the obligation to prepare a new EIS is not an unreasonable inconvenience or harm, but rather the logical result of vacating a legally deficient FEIS.").

[43] Vacatur of the Project EIS would not preclude the Forest Service from opting to engage in a programmatic planning process for its management Prince of Wales Island, only from using *this* document for that purpose. *Cf. Ctr. for Biological Diversity v. Nat'l Highway Traffic Safety Admin.*, 538 F.3d 1172, 1178–80 (9th Cir. 2008) (allowing agency to decide on remand whether to prepare EA or EIS); *see also Peña*, 2015 WL 1567444, at *5 ("Vacating the FEIS and ROD does not dictate how the agency should comply with the law in the future. Rather, it leaves to

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 10 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 10 of 14

acknowledge, vacatur of the Project EIS would not require the agency to start from scratch.[44] However it chooses to proceed, the Forest Service would have the ability to incorporate portions of that document by reference in future analyses.[45]

More concerning to the Court is the potential economic impact of partially vacating the Project EIS. The Forest Service maintains that vacatur would "further delay[] future timber sales on Prince of Wales Island by months or even years."[46] And amicus curiae Alaska Forest Association filed declarations from two executives of Southeast Alaska lumber companies, each of whom states that new timber sales are necessary to the continued viability of their businesses.[47] Each declarant also underscores the importance of local sawmills to the Southeast Alaska economy as a whole.[48]

---

the agency the discretion of how to appropriately proceed after setting aside the arbitrary and capricious agency actions.").

[44] *See* Docket 47 at 5, 9, 12.

[45] *See* 40 C.F.R. § 1502.21; *see also All. for the Wild Rockies v. U.S. Forest Serv.*, 907 F.3d 1105, 1118–21 (9th Cir. 2018) (discussing difference between tiering and incorporation by reference and affirming incorporation of draft EIS's data where challenged EIS contained adequate independent analysis of relevant impacts).

[46] Docket 46 at 13; *see also* Docket 46-1 at 3, ¶ 5 (Tongass Forest Supervisor's declaration stating that tiering to the Project EIS would allow the Forest Service to "authorize a legally compliant timber sale approximately twelve (12) months sooner").

[47] *See, e.g.*, Docket 45-1 at 3, ¶ 7 ("[T]he lack of a sufficient and reliable timber supply renders Viking [Lumber Company's] future highly precarious."); Docket 45-2 at 2, ¶ 4 ("The future of the Southeast Alaska timber industry currently is so precarious that any way in which the [Forest Service] can be allowed to hasten the sale of timber is crucial to our survival."); *but see* Docket 50 at 10 (contending that "the harms claimed by the timber industry and cited by the Forest Service are not consistent with the evidence").

[48] *See* Docket 45-1 at 6–7, ¶¶ 13–14; Docket 45-2 at 4, 6, ¶¶ 8, 11.

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 11 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 11 of 14

Nevertheless, the Court finds that the economic harm caused by partial vacatur of the Project EIS does not outweigh the seriousness of the errors in that document, such that remand without vacatur is appropriate. In *California Communities Against Toxics v. EPA*, the Ninth Circuit held that the Environmental Protection Agency committed both procedural and substantive errors in a rulemaking process that was intended to allow a California power plant to begin operation.[49] The Circuit opted to remand the rule to the agency without vacatur, concluding that interrupting construction of the plant would likely cause blackouts by "delay[ing] a much needed power plant" and also "be economically disastrous," since the plant was "a billion-dollar venture employing 350 workers."[50] Unlike the rule at issue in *California Communities Against Toxics*, partial vacatur of the Project EIS would not terminate any ongoing projects.[51] And although the Forest Service provides the majority of timber in the region, the sales contemplated in the Project EIS are not the only source of timber for local sawmills.[52] The Court

---

[49] 688 F.3d 989, 992–93 (9th Cir. 2012).

[50] *Id.* at 993–94. The power plant in question was slated to come on line roughly four months after the Ninth Circuit published its decision. *Id.* at 993. The Ninth Circuit did not, however, "authorize commencement of [the plant's] operation without a new and valid EPA rule in place." *Id.* at 994.

[51] *See* Docket 46 at 13–14; Docket 46-1 at 3, ¶ 5.

[52] *See* Docket 45-1 at 5–6, ¶ 12 ("Historically, only about 15% of our dependable timber volume has come from state lands, with the majority of our timber coming from Forest Service timber sales on the Tongass National Forest."); *but see id.* at 8, ¶ 17 ("I am continually looking for sources of timber to try and ensure Viking's continued viability, and I can assure the Court that non-Forest Service timber is not readily available."). Plaintiffs maintain that the State's timber

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 12 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 12 of 14

acknowledges that the timber industry will suffer economic harm as a result of partial vacatur of the Project EIS. But that harm is not so disruptive and irremediable so as to cause the Court to depart from the APA's normal remedy of vacatur.[53]

Facing similar facts, the district court for the District of Oregon concluded that "the disruption to the agency's plans that will result from vacatur of the FEIS is outweighed by the benefit of ensuring that a legal and adequate FEIS and ROD are in place before an irreversible logging project begins."[54] Here, too, the Court finds that the disruptive consequences of vacatur do not outweigh the need for a NEPA-compliant analysis of future road construction and vegetation management on Prince of Wales Island.

## CONCLUSION

In light of the foregoing, IT IS HEREBY ORDERED that the portions of the March 16, 2019 Record of Decision for the Prince of Wales Landscape Level

---

sales are only delayed. Docket 50 at 10 (citing minutes for March 17, 2020 Alaska Board of Forestry meeting).

[53] Moreover, partial vacatur of the Project EIS is not likely to result in environmental harm or to undermine the purpose of the statutes at issue—NEPA, NFMA, and ANILCA—a common theme among Ninth Circuit cases remanding without vacatur. *See, e.g.*, *Pollinator Stewardship Council v. U.S. Envtl. Prot. Agency*, 806 F.3d 520, 532 (9th Cir. 2015) ("When deciding whether to vacate rulings by the EPA, we consider whether vacating a faulty rule could result in possible environmental harm, and we have chosen to leave a rule in place when vacating would risk such harm." (citing *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1405–06 (9th Cir. 1995); *Cal Cmtys. Against Toxics v. U.S. Envtl. Prot. Agency*, 688 F.3d 989, 994 (9th Cir. 2012)).

[54] *League of Wilderness Defs./Blue Mountains Biodiversity Project v. Peña*, Case No. 3:12-cv-02271-HZ, 2015 WL 1567444, at *6 (D. Or. April 6, 2015).

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 13 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 13 of 14

Analysis Project that authorize vegetation management and road construction activities are VACATED.  IT IS FURTHER ORDERED that the October 19, 2018 Final Environmental Impact Statement is also VACATED as applied to vegetation management and road construction activities.  The Clerk of Court is directed to enter a final judgment accordingly.

DATED this 24th day of June, 2020 at Anchorage, Alaska.

<i>s/ Sharon L. Gleason</i><br>
UNITED STATES DISTRICT JUDGE

Case No. 1:19-cv-00006-SLG, *SEACC, et al. v. U.S. Forest Serv., et al.*
Order on Remedy
Page 14 of 14
Case 1:19-cv-00006-SLG   Document 53   Filed 06/24/20   Page 14 of 14